(334 P.3d 890)
No. 109,130

In the Matter of the Care and Treatment of RANDALL J. RITCHIE.

Opinion filed October 11, 2013.

Robert A. Anderson, Sr., of Robert A. Anderson, Sr., Law Office, of Ellinwood, for appellant.

Lee J. Davidson, assistant attorney general, and Derek Schmidt, attorney general, for appellee.

Before McAnany, P.J., Green and Hill, JJ.

Hill, J.: Randall J. Ritchie appeals his commitment for treatment as a sexually violent predator. He makes three claims: The court should not have admitted the testimony of a psychologist with a temporary license; there was insufficient evidence to support a finding that he is a sexually violent predator; and the 2011 amended Sexually Violent Predator Act is unconstitutional. We do not agree. We affirm his commitment.

*There is a history of sexual assaults here.*

In 1994, Ritchie agreed to plead guilty to one count of aggravated kidnapping, a violation of K.S.A. 21-3421. According to Ritchie, the 13-year-old victim had been walking with her friends when he "grabbed her off the street, forced her into a garage and raped her vaginally."

Ritchie received parole in November 2001. Then, in 2004, the Sex Offender Override Panel viewed Ritchie as a "low risk" to reoffend and relieved Ritchie of normal postrelease sex offender supervision protocols by allowing him to have unsupervised visits

with his children and to stop attending aftercare treatment. By October 2005, Ritchie was required to report by mail.

Unfortunately, in June 2006, Ritchie saw what he believed to be a "crime of opportunity" and got out of his car to stop an 8-year-old girl riding her bicycle. Ritchie then proceeded to insert his "little finger" into the child's vagina. Ritchie did not report this incident to his parole officer. Two other incidents involving young girls occurred just 4 months later at a Walmart store in Great Bend.

While in Walmart in October 2006, Ritchie approached a girl he believed to be around 8 years old and "picked her up, twirled her around, and sat her down and walked off." The next day, Ritchie returned to Walmart where he walked up to an 8-year-old girl and "put [his] hand underneath her dress and touched her vagina and inserted [his] pinkie." The girl screamed and Ritchie ran off. But he was apprehended leaving the store.

Ritchie eventually pleaded guilty to an amended charge of aggravated indecent solicitation of a child for the June 2006 offense in exchange for the State dismissing a criminal restraint charge for the same offense and the charge of aggravated indecent liberties with a child under Jessica's Law for the incident in October 2006. The district court sentenced Ritchie to 52 months' imprisonment.

Toward the end of his prison term, the State sought to commit Ritchie as a sexually violent predator under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq.* In its petition, the State included a clinical services report prepared by Dr. Jane Kohrs after she evaluated Ritchie in May 2011. Dr. Kohrs has prepared approximately 500 clinical services reports. Dr. Kohrs concluded that under the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) (DSM-IV), Ritchie had an Axis I diagnosis of pedophilia, nonexclusive type, sexually attracted to females with elements of nonconsent frotteurism. Dr. Kohrs had also completed the Static-99R actuarial instrument. Ritchie's score placed his risk of recidivism in the "moderate high" range.

Ritchie stipulated that probable cause existed to believe he was a sexually violent predator, and he waived his right to a probable cause hearing under K.S.A. 59-29a05. The district court ordered

Ritchie to the Larned State Security Hospital for a psychological evaluation.

Dr. Rebecca Farr, a postdoctoral psychologist at the Larned State Security Hospital, evaluated Ritchie. Dr. Farr has a psychology degree from California State University and a Master of Science degree in psychology and a Ph.D. in clinical-community psychology from the University of La Verne. At the time of Ritchie's evaluation, Dr. Farr had a temporary Kansas license to practice psychology. She had already satisfactorily completed the required 2,000 hours of postdoctorate clinical supervised work and was waiting to take the necessary examination.

Ritchie's case was Dr. Farr's first sexual predator evaluation assigned to her. Dr. Farr testified she interviewed Ritchie twice for his forensic evaluation. She assessed Ritchie as having Axis I diagnoses of pedophilia, frotteurism, and an Axis II diagnosis of antisocial personality disorder. Dr. Farr had also administered the Static-99R and Static-2002R actuarial instruments. Ritchie's scores on both instruments placed his risk of recidivism in the "high-risk" and "moderate-high risk" range respectively.

The district court granted Ritchie's request for an independent evaluation. Ritchie waived his right to a jury trial, and the matter was tried to the court in July 2012.

At trial, the State presented testimony from Dr. Kohrs, Dr. Farr, and Dr. John R. Reid, the supervising psychologist for Dr. Farr at the Larned State Security Hospital. Ritchie presented testimony from his own expert witness, Dr. Robert Barnett, the psychologist appointed by the district court to conduct the independent evaluation. The State also called Ritchie to testify, who likewise testified in his own behalf.

In Ritchie's written closing arguments, he argued that the forensic evaluation report completed by Dr. Farr and Dr. Farr's testimony should be excluded because Dr. Farr had violated the supervision requirements in the Kansas Administrative Regulations.

The district court rejected Ritchie's objections concerning Dr. Farr. The court found that Ritchie was a sexually violent predator and committed him to the Larned State Security Hospital for further treatment.

*What must the State prove?*

Whether an individual should be committed for treatment under the Sexually Violent Predator Act involves an examination by a qualified professional to determine whether that person is a sexually violent predator. K.S.A. 59-29a05(d). In his appeal, Ritchie first argues the district court abused its discretion in admitting Dr. Farr's forensic evaluation report and corresponding expert opinion testimony because her report and testimony lacked foundation. Specifically, Ritchie alleges Dr. Reid did not properly supervise Dr. Farr in conducting the forensic evaluation report as required by the Kansas Administrative Regulations.

Our standard of review on a question of whether the district court erred in admitting certain evidence in an action under the Act is one of abuse of discretion. *In re Care & Treatment of Lair,* 28 Kan. App. 2d 51, 53, 11 P.3d 517, *rev. denied* 270 Kan. 898 (2000). According to the Kansas Supreme Court in *Fischer v. State,* 296 Kan. 808, Syl. ¶ 8, 295 P.3d 560 (2013), judicial discretion is abused if the judicial action is

- arbitrary, fanciful, or unreasonable, *i.e.,* if no reasonable person would have taken the view adopted by the trial court;
- based on an error of law, *i.e.,* if the discretion is guided by an erroneous legal conclusion; or
- based on an error of fact, *i.e.,* if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based.

Additionally, interpretation of a statute is a question of law which the appellate courts review de novo. *In re Care & Treatment of Hunt,* 32 Kan. App. 2d 344, 353, 82 P.3d 861, *rev. denied* 278 Kan. 845 (2004).

*This issue has been preserved for appeal.*

The State argues that Richie did not preserve this issue of Dr. Reid's failure to supervise Dr. Farr because he did not make a timely and specific objection at trial prior to the district court admitting the forensic evaluation report or hearing Dr. Farr's testimony. Indeed, the record indicates that Ritchie did not object be-

fore or during Dr. Farr's testimony. In fact, when the State offered the forensic evaluation report into evidence during Dr. Farr's testimony, Ritchie's attorney stated he had "[n]o objection." The first time Ritchie took issue with the admissibility of the forensic evaluation report and Dr. Farr's testimony was in his written closing arguments submitted to the district court approximately 6 weeks after the bench trial. That is sufficient to preserve the issue for our review.

In *State v. Gordon*, 219 Kan. 643, 652, 549 P.2d 886 (1976), *superseded by statute on other grounds as stated in State v. Murry*, 271 Kan. 223, 21 P.3d 528 (2001), our Supreme Court found the nature of a bench trial allows the district court to disregard the lack of a contemporaneous objection to evidence during trial when the defendant makes the district court aware of his or her objection in a posttrial motion after the district court has taken the matter under advisement, but prior to its decision. The court held:

"Ordinarily, failure to make timely, specific objection to the admission of evidence will bar consideration of the admissibility question on appellate review. [Citations omitted.] Here, the appellant's objection was not 'timely' in the strict sense, but there is no doubt the district court was apprised of the issue before it rendered its decision . . . . What transpired is consistent with the rationale underlying the contemporaneous objection rule—*i.e.* [,] objecting to admissibility and stating the grounds therefor permits the court to preclude improper evidence from affecting the decision. This was a trial by the court; no jurors had been swayed by the improper evidence. The court had not rendered its decision when the issue was raised, and we think under the circumstances of this case the spirit if not the letter of the contemporaneous objection rule was satisfied." 219 Kan. at 652.

Similarly, in *State v. Parson*, 226 Kan. 491, 493-94, 601 P.2d 680 (1979), our Supreme Court, citing *Gordon*, relaxed the contemporaneous objection rule by holding that the appellant's objections to the evidence stated in his argument in a motion for judgment of acquittal filed at the close of the State's case during a bench trial were sufficiently timely to obtain appellate review.

The State acknowledges the holding in *Gordon* but argues "it is doubtful that *Gordon* remains good law" in the face of our Supreme Court's clear reinvigoration of the contemporaneous objection rule. See *State v. King*, 288 Kan. 333, 349, 204 P.3d 585

(2009). *King* noted, "From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims . . . must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." 288 Kan. at 349. In other words, the State seeks a rigid application of the contemporaneous objection rule.

Our Supreme Court's recent decision in *State v. Kelly*, 295 Kan. 587, 595, 285 P.3d 1026 (2012), convinces us that the *Gordon* ruling is still good. In *Kelly*, the court held that the lack of an objection during a criminal bench trial on stipulated facts did not preclude appellate review of the pretrial denial of a defendant's motion to suppress when a different judge conducts the bench trial. While discussing the timeliness of a defendant's contemporaneous objection to trial evidence made at sentencing, the *Kelly* court acknowledged *Gordon*. The court stated, "Granted, we have considered posttrial motions timely in some circumstances. For example, in [*Gordon*] we concluded an objection stated after a bench trial but before the judge had ruled was timely interposed because 'the spirit if not the letter of the contemporaneous objection rule was satisfied.'" 295 Kan. at 593. Had the Supreme Court wanted to alter the *Gordon* holding in any way it could have done so at that time but did not.

Ritchie had a bench trial. At the close of evidence, Ritchie's counsel asked the district court for a transcript of the proceedings and permission to submit his closing argument in writing. Ritchie's counsel stated, "I would want to be able to cite to the record and make legal argument and submission to the Court." The district court agreed and ordered that each party would get a transcript and an appropriate amount of time to present arguments. In his written closing arguments, Ritchie stated his objection to Dr. Farr's forensic evaluation report and testimony. And the State responded to Ritchie's objection in its written closing arguments by addressing Dr. Farr's qualifications. In doing so, the State noted that Ritchie had not objected to Dr. Farr's qualifications during trial. But the State went on to frame Ritchie's objection in his written closing argument as a "belated request" and did not argue the contemporaneous objection rule. Finally, the district court considered Rit-

chie's objection before rendering its decision, as evidenced by its ruling denying this objection in the journal entry committing Ritchie under the Act.

Because there is no indication that the Kansas Supreme Court is departing from its previous position, Ritchie's objection made during his written closing argument preserved this issue for appeal. See *Gordon*, 219 Kan. at 652.

*A careful reading of the regulations reveals that Dr. Farr violated none of the supervision requirements.*

K.A.R. 102-1-5a sets out the supervision requirements for temporarily licensed psychologists such as Dr. Farr. K.A.R. 102-1-5a(e)(3) states the supervisor shall:

"(B) be available to the supervisee at the points of decision making regarding the diagnosis and treatment of clients or patients;

. . . .

"(D) . . . review and evaluate the psychological services delivered and procedures used;

"(E) ensure that each client or patient knows that the supervisee is practicing psychology under supervision;

. . . .

"(G) maintain documentation of the supervision that details each type of the psychological services and procedures in which the supervisee engages and the supervisee's competence in each."

Ritchie asserts that Dr. Reid's supervision of Dr. Farr was deficient in two aspects. First, Ritchie argues Dr. Reid neither met with Ritchie nor participated in Ritchie's two interviews conducted by Dr. Farr. Such an allegation concerns K.A.R. 102-1-5a(e)(3)(E) and K.A.R. 102-1-5a(f)(2). Second, Ritchie argues Dr. Reid was not involved at any point in Dr. Farr's decision making in completing the evaluation. Ritchie maintains Dr. Farr "*must* be supervised by a supervising psychologist during all decision points in the process." (Emphasis added.) This allegation concerns K.A.R. 102-1-5a(e)(3)(B).

For authority, Ritchie relies upon Dr. Barnett's interpretation of the supervision requirements under K.A.R. 102-1-5a. Dr. Barnett testified that in the case of psychologists who supervise a temporary licensed psychologist, "All of the clients of the trainee are required

to have been met by the supervisor at least once" and that "it is a requirement of the supervisory administration regulation [K.A.R. 102-1-5a] that the supervisor be involved at all decision points in the process of evaluating or treating a client." Dr. Barnett opined that Dr. Reid's failure to comply with both of these regulations rose to the level of having sanctions imposed upon him.

A plain reading of the Kansas Administrative Regulation shows Dr. Barnett's understanding of K.A.R. 102-1-5a is erroneous and that Ritchie fails to establish the alleged violations of the regulation. No regulation requires a supervisor of a temporary licensed psychologist to personally meet the patient or attend the interviews conducted by the one supervised. Basically, Dr. Reid only had to ensure that Ritchie was notified that Dr. Farr was under his supervision. See K.A.R. 102-1-5a(e)(3)(E). Additionally, Dr. Farr had to provide to Ritchie, in writing, how to get in touch with Dr. Reid. See K.A.R. 102-1-5a(f)(2). The record reveals that both of these requirements were satisfied when Dr. Farr first met with Ritchie. Dr. Farr provided Ritchie with a supervision disclosure form that indicated she was under Dr. Reid's supervision as a temporary licensed psychologist and provided Ritchie with Dr. Reid's contact information.

In like manner, Ritchie's assertion that a supervisor "must" be directly involved during all decision points is directly contradicted by the language in K.A.R. 102-1-5a(e)(3)(B), which only required that Dr. Reid "be available" to Dr. Farr. There is no suggestion in the record that Dr. Reid was unavailable to Dr. Farr. In fact, the record indicates that every week Dr. Farr met with Dr. Reid for at least 1 hour of individual supervision and had at least 1 hour of group supervision with Dr. Reid and the other staff psychologists.

This is not the first time that this issue has been raised on appeal. A prior panel of this court in *In re Care and Treatment of Stanley*, No. 100,611, 2009 WL 3082539 (Kan. App. 2009) (unpublished opinion), considered a similar challenge under K.A.R. 102-1-5a to the admission of a forensic evaluation report. In that case, the panel found not only that the appellant failed to establish an actual violation of K.A.R. 102-1-5a as a matter of law, but that such a vio-

lation would not necessarily preclude admission of an expert's report and testimony. The panel held:

"[E]ven if we assume that a violation of K.A.R. 102-1-5a took place, Stanley fails to show why such a violation requires Dr. Subramanian's report and corresponding testimony to be excluded from evidence. The Kansas Sexually Violent Predator Act states only that '[t]he evaluation shall be conducted by a person deemed to be professionally qualified to conduct such an examination.' K.S.A. 59-29a05(d). Stanley does not allege Dr. Subramanian was professionally unqualified to conduct the examination. Moreover, expert opinion testimony generally is admissible if it aids the trier of fact with unfamiliar subjects or interpreting technical facts, or if it assists the trier of fact in arriving at a reasonable factual conclusion from the evidence. [Citation omitted.]." *Stanley*, 2009 WL 3082539, at *3.

We adopt this reasoning.

Here, the district court's rationale in rejecting Ritchie's argument that Dr. Farr had violated the Kansas Administrative Regulations is in accord with the *Stanley* panel's holding. When it spoke on the relevance of a K.A.R. 102-1-5a violation when considering whether a person is "professionally qualified" under K.S.A. 59-29a05(d), the district court opined:

"The bottom line for this court's decision is Dr. Farr did complete a sexual predator evaluation, she followed the statutes in doing that evaluation and she followed the diagnostic and statistical manuals for mental disorders and other manuals that are used within this area. Her determination and decision was based upon the facts of the case and were not affected by her lack of being a fully licensed psychologist, even if you accept [Ritchie's] argument. She has the experience in this area and she had a temporary license. This court will not strike her testimony based upon this alleged lack of experience, licensing or supervision."

Ritchie acknowledges the ruling in *Stanley* but makes no effort to distinguish that case from this one other than to allege Dr. Farr, as a temporarily licensed psychologist, was professionally unqualified. In his view, because Ritchie was the first sexual predator evaluation Dr. Farr was assigned and she had "no supervision from Dr. Reid as it pertains to her sexual predator evaluation of [Ritchie]," she could not render an admissible opinion.

We are not convinced by Ritchie's argument. Simply put, he has failed to establish Dr. Reid's supervision of Dr. Farr under K.A.R. 102-1-5a was deficient. Further, Ritchie's argument regarding Dr. Farr's license status or lack of experience is without merit. Just

because she was working under a temporary license at the time, that does not mean she was unqualified to do the work. See *In re Care & Treatment of Gendron*, No. 97,093, 2008 WL 762506, at *1 (Kan. App. 2008) (unpublished opinion); *In re Plummer*, No. 96,732, 2007 WL 2080465 (Kan. App. 2007) (unpublished opinion).

Like the facts in *Stanley*, the record indicates Dr. Farr's thorough forensic evaluation report and testimony sufficiently assisted the district court in reaching a reasonable factual conclusion. See *State v. Cooperwood*, 282 Kan. 572, 578-79, 147 P.3d 125 (2006). Because Ritchie failed to establish the alleged violations of the regulations and Dr. Farr was professionally qualified according to K.S.A. 59-29a05(d) to evaluate Ritchie, the district court did not abuse its discretion.

*There is ample evidence that Ritchie is a sexually violent predator according to law.*

As we address this issue, we must review all of the evidence in the light most favorable to the State and decide if we are convinced a reasonable factfinder could have found the State met its burden to demonstrate beyond a reasonable doubt that Ritchie is a sexually violent predator. In doing so, we do not reweigh the evidence, pass on the credibility of the witnesses, or resolve any conflicting evidence. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

The Kansas Supreme Court has clarified that the State must prove four elements to identify an individual as a sexually violent predator. The State must prove beyond a reasonable doubt that the individual

(1) has been convicted of or charged with a sexually violent offense;

(2) suffers from a mental abnormality or personality disorder;

(3) is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder; and

(4) has serious difficulty controlling his or her dangerous behavior. *Williams*, 292 Kan. at 106.

Ritchie does not dispute his convictions but does dispute the remaining three elements. We will address them in order, beginning with his alleged mental abnormality or personality disorder.

Dr. Farr stated that Ritchie presents Axis I diagnoses of (1) pedophilia, sexually attracted to females, nonexclusive type; (2) frotteurism; and (3) alcohol dependence, sustained full remission.

To explain these diagnoses, she testified that Ritchie met the DSM-IV criteria for a pedophile because Ritchie was at least 16 years of age and admitted to having sexual relations with children at least 5 years younger; had reoccurring sexual fantasies, urges, or behaviors involving sexual activity with a child or children generally under the age of 13; and had acted on his sexual urges, causing him interpersonal difficulty. Dr. Farr also testified Ritchie's diagnosis of pedophilia was supported by his conviction for aggravated indecent solicitation of a child and Ritchie's own acknowledgments in his autobiography and written treatment assignments. In the forensic evaluation report, Dr. Farr noted that "Ritchie admitted to having approximately 32 contact victims and has engaged in numerous offending behaviors such as frotteurism, fondling, rape, forced fellatio, and molestation of children and animals. He also admitted to several noncontact victims while engaging in such behaviors as exposure, peeping, and showing pornography to children."

Dr. Farr based Ritchie's diagnoses of frotteurism and alcohol dependence on Ritchie's statements during the clinical interviews.

In her Axis II diagnosis, Dr. Farr found Ritchie has an antisocial personality disorder, based on his pattern of disregard for and violation of the laws found in his records. Dr. Farr based her Axis II diagnosis on a review of the record, including the written treatment assignments completed by Ritchie in which Ritchie admitted to, *inter alia*, repeatedly performing unlawful acts, physical and sexual aggression towards others, and an inability to sustain employment. Furthermore, the record indicated deceitfulness, reckless disregard for the safety of himself and others, evidence of the onset of a conduct disorder before age 15, and a lack of remorse.

We will not reweigh this evidence as Ritchie asks. With this record, viewed in the light most favorable to the State, a reasonable

factfinder could have found that the State proved beyond a reasonable doubt that Ritchie had a mental abnormality or personality disorder. See *Williams*, 292 Kan. at 104. Therefore, the State met its burden on the second element.

Now, we move on to the third *Williams* element—whether Ritchie is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder. Ritchie's witness, Dr. Barnett, gave inconclusive testimony on this point. When addressing this element at trial, Dr. Barnett testified, "I don't know if [Ritchie] will reoffend or not. I think he has the ability to control his behavior. Whether he chooses to or not, I don't know. That's the best I can do with that one."

Notably different, Dr. Farr testified that she concluded that Ritchie met the criteria of an individual likely to reoffend because of a mental abnormality or personality disorder. Dr. Farr noted that the fact this was Ritchie's second evaluation under the Sexually Violent Predator Act supported her finding regarding Ritchie's propensity to commit acts of sexual violence in the future. Dr. Farr also attributed her conclusion to, *inter alia*, her diagnoses regarding Ritchie's different mental abnormalities, Ritchie's attempts to minimize the details of his past aggressive behaviors, the number of times Ritchie had been charged previously with crimes against children, and Ritchie's admissions to having engaged in numerous sexually aggressive behaviors and a long-standing pattern of rape fantasies.

Dr. Farr's basis for her opinion also included actuarial testing analysis. Ritchie's score of 6 on the Static-99R placed his risk of recidivism in the "high-risk" range, and his score of 7 on the Static-2002R indicated a "moderate-high risk" range. Dr. Farr also opined that the actuarial instruments underestimate an individual's lifetime sexual recidivism potential because the measures only cover a 10-year period.

Ritchie's argument on this point is unpersuasive. In response to the actuarial tests, he simply cites *In re Care & Treatment of Girard*, 296 Kan. 372, 294 P.3d 236 (2013), and makes the following single sentence argument: "[T]he *Frye* test applies to actuarial risk

assessments." He also points to Dr. Barnett's testimony regarding the lack of reliability of using the Static-99R and Static-2002R tests.

Basically, his argument is legally insignificant. Neither Dr. Farr nor the district court placed undue weight on the test scores. In fact, Dr. Farr testified that she specifically reached her conclusion regarding the third *Williams* element based on all of the factors "as a whole—not just looking at the actuarials by themselves or the diagnoses by themselves." See *Williams*, 292 Kan. at 111. *Williams* found that "other evidence could convince a rational factfinder that the State has met its burden beyond a reasonable doubt, especially when . . . both experts based their opinions on factors other than the [actuarial] tests." 292 Kan. at 111. Further, the record here indicates the district court placed little or no weight on the actuarial scores and found Ritchie was likely to reoffend because of the nature of Ritchie's diagnoses and his 20- to 25-year history "of recurring issues, contact and criminal convictions of sexual deviant behavior with minors."

Without reweighing the experts' testimony, the facts on which Dr. Farr based her opinion, when viewed in the light most favorable to the State, presented sufficient evidence to establish the third element—that Ritchie is likely to reoffend.

The chief dispute between the parties relates to the fourth *Williams* element—whether Ritchie has serious difficulty controlling his dangerous behavior. Both Dr. Farr and Dr. Kohrs diagnosed Ritchie with the mental abnormality of pedophilia. The DSM-IV describes pedophilia as "a mental abnormality that critically involves what a lay person might describe as a lack of control." *In re Care & Treatment of Palmer*, 46 Kan. App. 2d 805, 816, 265 P.3d 565 (2011), *rev. denied* 296 Kan. 1130 (2013).

The experts for each side offered contrary opinions about this element. Dr. Kohrs testified that Ritchie's diagnoses of pedophilia and frotteurism, in conjunction with his history of acting on his fantasies, made it difficult for him to control his volitional behavior. Dr. Kohrs opined:

"I think his fantasies are so intense and his behaviors are so elevated and—just in terms of the choking that was involved with at least three persons from his victim

sheets . . . that his brain is so conditioned to these fantasies and sexual deviancies that it will be very hard for him to control this in a community setting."

Similarly, Dr. Farr testified that Ritchie poses a risk to others because based on Ritchie's history of not being able to control his behavior in the past, he would have difficulty controlling it in the future.

To the contrary, Dr. Barnett testified, "I don't think [Ritchie] has serious difficulty controlling [his behavior]."

The district court acknowledged that the experts disputed this element and that the State had conceded Ritchie does have some level of control *in a structured environment* such as in prison or while on postrelease supervision, but found Ritchie's "horrible" past behaviors dispositive. The district court noted:

"The evidence continued to show [Richie] was unable in an unstructured environment to control himself from having sexual urges and/or fantasies and then acting out upon those urges and fantasies to the dangerousness for the victims he was convicted of harming and dangerousness of those he reported but he was not caught."

When we view this evidence in the light most favorable to the State, we conclude there was sufficient evidence to allow a rational factfinder to find beyond a reasonable doubt that Ritchie had serious difficulty controlling his dangerous behavior.

Our review of the record on appeal leads us to hold there is sufficient evidence for a reasonable factfinder to find that Ritchie is a sexually violent predator.

*The Act is constitutional.*

In his final argument, Ritchie summarily asks us to find that the 2011 amendment to the Kansas Sexually Violent Predator Act is unconstitutional because it violates his "due process rights, his rights [*sic*] to confrontation and all other procedural safeguard [*sic*] provided for by the Kansas Supreme Court and the Rules of Evidence." Ritchie fails to even explain how this change in the law adversely affected his rights.

Indeed, with the enactment of K.S.A. 2011 Supp. 59-29a06(c), the legislature created an exception to K.S.A. 60-456(b), the general statute dealing with the admissibility of expert opinions. It now

does not apply to the facts or data reasonably relied upon by an expert in forming opinions or inferences in actions under the Kansas Sexually Violent Predator Act.

The Act is a self-contained statutory scheme that, despite possessing many characteristics of a criminal proceeding, is a civil proceeding. *In re Palmer*, 46 Kan. App. 2d at 810. Therefore, the right of confrontation found in the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights concern criminal prosecutions and do not apply in civil commitment proceedings. See *Kansas v. Hendricks*, 521 U.S. 346, 371, 117 S. Ct. 2072, 138 L. Ed 2d 501 (1997); *In re Patterson*, No. 107,232, 2013 WL 2395313, at *18 (Kan. App. 2013) (unpublished opinion).

Nothing in Ritchie's conclusory argument overcomes the presumption of validity that appellate courts apply when considering the constitutionality of a statute. See *State v. Gaona*, 293 Kan. 930, 958, 270 P.3d 1165 (2012).

Affirmed.