NOT DESIGNATED FOR PUBLICATION

No. 116,285

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
SCOTT M. ARCULEO.

MEMORANDUM OPINION

Appeal from Lyon District Court; MERLIN G. WHEELER, judge. Opinion filed April 28, 2017.
Affirmed.

*Rand Simmons*, of Simmons Law Office, of Emporia, for appellant.

*Bryan C. Clark*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN, J., and BURGESS, S.J.

*Per Curiam*: Scott M. Arculeo was convicted in 1997 in Lyon County, Kansas, of the sexually violent offenses of rape, two counts of aggravated criminal sodomy of a child under the age of 14, and two counts of aggravated indecent liberties with a child under the age of 14. Prior to his scheduled release in September 2015, the State moved to have Arculeo classified and civilly committed under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 59-29a01, *et. seq*. Arculeo's waiver of jury trial was accepted, and the matter was tried before the bench in June 2016. In July 2016, the district court found that Arculeo is a sexually violent predator subject to involuntary commitment. Arculeo appealed, and we affirm.

1

In December 1997, Arculeo was convicted in Lyon County of the sexually violent offenses of rape, two counts of aggravated criminal sodomy, and two counts of aggravated indecent liberties with a child in case 97 CR 350. In a companion criminal case, 97 CR 180, Arculeo was charged with 11 counts of various sexual conduct with children and 1 count of criminal possession of a firearm; he was convicted of 8 of the 12 counts in 1998. This second criminal case was ultimately overturned on appeal because the compulsory joinder rule barred the second prosecution. *State v. Arculeo*, 29 Kan. App. 2d 962, 36 P.3d 305 (2001). Due to Arculeo's successful appeal, his sentence was ultimately amended from serving approximately 80 years in prison to serving approximately 18 years.

Between 1999 and 2011, while in prison, Arculeo received 46 disciplinary reports (DRs) for a variety of conduct and rule infractions. Of these, six to eight were for sexually explicit conduct or possessing sexually explicit materials. Two of those were specifically for possession of child pornography. In 2002, Arculeo was found in possession of 12 cutout magazine clippings of young male children, either completely or partially naked, and mainly exposing their genital areas. The second DR for child pornography was in 2007, at which time Arculeo was found in possession of pictures of intercourse and young children, including full frontal nudity of a child. Arculeo disclosed to his treatment providers and evaluators that he masturbated to pictures of young males.

*The record contains extensive evidence of Arculeo's psychological condition*

The record contains evidence concerning a clinical services report which was completed in 2013 in anticipation of Arculeo's release from custody and the update of the report which was prepared by a second psychologist in anticipation of the hearing in this case. He was also evaluated by two other psychologists including one psychologist hired

by Arculeo. All the evaluations were completed by experienced PhD-level psychologists, and three of the four psychologists, Drs. Derek Grimmell, Christine DiRubbo, and Jarrod Steffan, testified at trial.

The written evaluations and the testimony of the psychologists were consistent in all ways pertinent to this appeal. From 2013 forward, all four psychologists diagnosed Arculeo with significant character disorders. The psychologist hired by Arculeo diagnosed him with three personality disorders. Arculeo was diagnosed by all the psychologists with pedophilia. Arculeo was described as exploitative and manipulative. Arculeo's behavior was described as persistently and constantly maladaptive. All the psychologists commented on how significant his multiple DRs were and that Arculeo was resistant to treatment and supervision. The psychologists observed that Arculeo spent much of his time justifying or minimizing his behavior. All of the psychologists agreed that Arculeo posed a high risk to reoffend.

*There was no professional testimony offered at trial to contest the psychologist's findings*

The only dissenting opinion to the findings of the psychologists was Arculeo's own testimony at his sexually violent predator trial. Arculeo testified that he disagreed with his diagnosis of pedophilia because he claimed the incidents were "isolated and singular," that they all happened between 1995 or 1996 and 1997, and that none of the relationships lasted longer than 6 months. Arculeo denied being sexually attracted to people under the age of 18. Arculeo also disagreed with his diagnosis of borderline personality disorder because "I don't believe I fit the criteria correctly." Arculeo added that he let his treatment providers and evaluators believe he was psychotic so he could be in a single cell. Regarding his diagnoses, Arculeo testified that "all these [treatment professionals] were interested in talking about was the particulars to my case and how I had supposedly molested these children and why and how many times."

While Arculeo admitted he committed a sexually violent crime "for statute purposes," he testified that he does not believe he has an abnormality. Arculeo described being tested after his intake into prison in 1998 and testified he marked "everything wrong" on the testing because it "was kind of fun." Arculeo also testified that he does not have the propensity to commit repeat acts of sexual violence. Arculeo stated, "I feel that the information that's being used has been shown clearly that somebody didn't do their job . . . no one tested me for these things."

Arculeo agreed with his Static-99R score of 2 or 3 in his 2013 clinical services report, but he largely disagreed with many of the details in the remainder of the evaluation.

On cross-examination, Arculeo admitted that his underlying convictions were for crimes against children, as were the crimes underlying his dismissed convictions. Arculeo likewise admitted that he disclosed in his sexual history questionnaire, filled out as part of his sex offender treatment program (SOTP), that he had engaged in various sexual activities and conduct with children. Arculeo testified that as of December 2014, while in the SOTP, he was masturbating every few days. Arculeo further testified that his DRs regarding possession of child pornography were adjudicated in hearings and he was found guilty. Arculeo also acknowledged in one of his evaluations that he was attracted to "[t]eenagers up to adulthood" and that his preferred method of sexual intercourse is oral sex.

Arculeo again stated that he disagreed with his diagnoses but admitted he is not a licensed psychologist and has no training or education in the field. Arculeo further testified that he is aware that the psychologists who testified are all licensed psychologists but he does not agree with any of them regarding his case. Arculeo took issue with the statements and analysis of the psychologist who did his clinical services

4

report, as he did with the therapists who treated him in the Kansas Department of Corrections, testifying he thought they were all wrong.

THE VERDICT

After taking the matter under advisement, the district court reconvened approximately 2 weeks after the trial concluded in order to render its verdict. The district court found that the State's evidence demonstrated beyond a reasonable doubt Arculeo had been convicted of a sexually violent offense within the meaning of the KSVPA and that there was unrefuted testimony regarding his diagnoses of a mental abnormality (pedophilia) and a personality disorder making it likely Arculeo will engage in repeat acts of sexual violence. The district court stated that the only real question was whether Arculeo would find it seriously difficult to control his dangerous behavior.

The district court noted the focus of Arculeo's defense against the State's argument on the likelihood of his sexually reoffending was an attack on the scoring of the Static-99R. However, the district court stated that all of the trial experts scored the Static-99 the same way. The district court acknowledged the only contrasting testimony was provided by Arculeo, himself, which required the court to weigh the credibility of the experts against the credibility of Arculeo. In doing so, the district court pointed out that at trial Arculeo "clearly expressed the fact that he was more than willing to—if it benefited him—fabricate or lie about his circumstances in order to gain him benefit." The district court determined there was "no question" regarding credibility determinations and found the State had demonstrated beyond a reasonable doubt that each of the claims made in its sexually violent predator petition were true. The district court determined that Arculeo is a sexually violent predator as defined by law and is appropriately civilly committed until such time as he is safe to be discharged or released.

THE EVIDENCE, WHEN VIEWED IN THE LIGHT MOST FAVORABLE TO THE STATE, CAN CONVINCE A REASONABLE FACTFINIDER THAT THE STATE MET ITS BURDEN TO DEMONSTRATE BEYOND A REASONABLE DOUBT THAT ARCULEO IS A SEXUALLY VIOLENT PREDATOR

When presented with an issue of whether evidence is sufficient to sustain the State's burden of proof in a sexually violent predator case, an appellate court reviews all of the evidence in the light most favorable to the State and determines whether it is convinced that a reasonable factfinder could have found the State met its burden to demonstrate beyond a reasonable doubt that the individual in question is a sexually violent predator. The appellate court does not reweigh evidence, determine the credibility of witnesses, or resolve conflicts in the evidence. *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

To find that Arculeo is a sexually violent predator, the district court must have determined beyond a reasonable doubt Arculeo (1) was convicted of or charged with a sexually violent offense, (2) suffers from a mental abnormality or personality disorder, which (3) makes him likely to engage in repeat acts of sexual violence, and (4) he has serious difficulty controlling his dangerous behavior. K.S.A. 2016 Supp. 59-29a02(a); *Kansas v. Crane*, 534 U.S. 407, 412-15, 122 S. Ct. 867, 151, L. Ed. 2d 856 (2002).

Arculeo argues on appeal there was insufficient evidence to support a finding that he is a sexually violent predator. Arculeo concedes he meets the first statutory requirement of having a conviction for a sexually violent offense. However, Arculeo contends that his conviction fails on the second, third, and fourth statutory and caselaw requirements.

*Second requirement—diagnosis of mental abnormality or personality disorder*

Arculeo argues the district court incorrectly found that there is unrefuted testimony regarding his diagnoses of pedophilia disorder and borderline personality disorder. Arculeo claims that each of the State's witnesses "depended heavily on the previous reports in [his] file" in forming their diagnoses. Arculeo further argues that some of the psychological testing done was invalid and that diagnoses appeared on his record and were then abandoned throughout the early years of his prison term.

Ultimately, Arculeo argues for an alternative interpretation of the evidence provided at trial. However, the appellate court does not reweigh evidence or resolve conflicts in the evidence. *Williams*, 292 Kan. at 104. Even if the expert evidence had been refuted by a witness other than himself, Arculeo fails to explain how mere refutation of portions of the record should overcome the district court's ultimate findings regarding his diagnoses.

A thorough reading of the record on appeal reflects that Arculeo misstates the expert testimony and methodology. The State points out that, although the three expert witnesses conducted comprehensive records reviews as part of their sexually violent predator evaluations, there is nothing to suggest any one of them did not independently evaluate Arculeo: "The doctors did not just parrot previous diagnoses." As the State points out, the diagnoses were based on criteria in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) which all of the experts referenced and then provided substantive examples of how Arculeo met those criteria.

Further, the testing conducted by Dr. DiRubbo in late 2015 was not invalid, as Arculeo suggests. In fact, Dr. DiRubbo testified at trial that, although Arculeo failed to respond to seven of the items on the personality test, a test is not invalidated until a subject fails to respond to 30 items. There is nothing in the record to suggest that

personality tests are definitive diagnostic tools regarding personality disorders such that an invalidated test would necessarily invalidate a diagnosis.

Lastly, Arculeo argues, without explanation, that his shifting diagnoses over the first 5 years of incarceration effectively disputes his long-standing diagnoses of pedophilia and borderline personality disorder. However, Dr. Grimmell testified that the presence and absence of diagnoses in that first 5 years pertained only to whether or not Arculeo displayed any psychopathology. Additionally, Dr. Grimmell explained that personality disorders were formerly referred to as "Axis II" disorders and were generally considered untreatable. As a consequence of this perception, such diagnoses were routinely left off of subsequent institutional treatment records. The record demonstrates that Dr. Grimmell's testimony on this point is unrefuted. Additionally, the State made no claim in its petition or at trial that Arculeo's diagnoses of mental abnormality and/or personality disorder under the Act were founded on any diagnosed psychosis in Arculeo. The shifting diagnoses in the psychotic spectrum are not relevant to this case.

Given the weight of expert opinion at trial and the written evaluations in evidence, when viewed in the light most favorable to the State, it was reasonable for the district court to determine that Arculeo does suffer from pedophilia disorder and borderline personality disorder. The district court did not err in finding that the State met its burden of proof beyond a reasonable doubt Arculeo has an abnormality and/or personality disorder within the meaning of the KSVPA.

*Third requirement—likely to commit repeat acts of sexual violence due to mental abnormality or personality disorder*

Arculeo argues the experts' opinions that he is likely to engage in repeat acts of sexual violence due to his pedophilia disorder and borderline personality disorder are inadequate. Arculeo argues that the diagnoses, his prison disciplinary record, and the

8

Static-99R scores were insufficient to meet the State's burden. The district court found that there was ample evidence to support the experts' opinions of a nexus between his diagnoses and the likelihood Arculeo will commit future acts of sexual violence. Again, Arculeo's argument relies upon a piecemeal reweighing of the evidence and an indictment of the methodology of an actuarial tool. This is not what this court does. See *Williams*, 292 Kan. at 104; *In re Care & Treatment of Ritchie*, 50 Kan. App. 2d 698, 711, 334 P.3d 890 (2014) (argument regarding unreliability of the Static-99R was "legally insignificant" because neither the district court nor the State's expert "placed undue weight on the test scores").

As the State describes in detail, there was ample evidence in the trial record to support the district court's finding that Arculeo is likely to commit repeat acts of sexual violence due to his diagnoses. The factual record is replete with examples of Arculeo's inability to follow laws, rules, regulations, and supervisory mandates. The record demonstrates that Arculeo is not moved to conform or adhere to societal norms, whether in or out of prison, and regardless of the negative consequences. Instead, the record shows that Arculeo views punishment for his crimes and infractions as persecution, which adds to his unstable self-image, which in turn motivates him to seek comfort in his child-victims. The record reflects that Arculeo had more DRs, especially sexually explicit DRs, than any other inmate Dr. Grimmell had encountered after conducting more than 400 sexually violent predator evaluations in Kansas. All three experts opined that Arculeo's pedophilia and borderline personality disorder would drive him to reoffend. For example, Dr. Grimmell testified that Arculeo's diagnoses rendered him likely to engage in repeat acts of sexual violence. The pairing of Arculeo's deviant sexual interest in children and his destabilizing personality disorder impair his volition and make it seriously difficult for Arculeo to control his dangerous behavior.

Ultimately, Arculeo's argument oversimplifies the State's evidence upon which the district court relied in determining that the third element of the KSVPA was met. The

diagnoses of pedophilia and borderline personality disorder were based on Arculeo's specific conduct, attitudes, and perceptions that fell within the diagnostic criteria specified in the DSM-5. Arculeo's disciplinary record was a part of that analysis as being indicative of certain diagnostic criteria, such as his desires, impulsivity, and willingness to violate supervisory and structured norms. Finally, the Static-99R was, as every expert witness testified, an actuarial tool that provided empirical data to affirm each of their clinical opinions, but was not the sole basis of those opinions. See *Williams*, 292 Kan. at 111 (even if a respondent has low scores on actuarial tests, other evidence can convince a rational factfinder that the State met its burden beyond a reasonable doubt).

When viewed in the light most favorable to the State, it was reasonable for the district court to determine the State proved beyond a reasonable doubt that Arculeo's likelihood of engaging in repeat acts of sexual violence is due to his pedophilia disorder and his borderline personality disorder. The district court did not err in finding that the State met its burden as to this third requirement in the KSVPA.

*Fourth requirement—serious difficulty controlling dangerous behavior*

Finally, Arculeo argues the State did not meet its burden to demonstrate beyond a reasonable doubt that he would have serious difficulty controlling his dangerous behavior. In deliberating this question, the district court observed that Arculeo focused his defense on the State's argument regarding the third element—his likelihood of reoffending—and, in doing so, honed his attack on the Static-99R scoring methodology which has already been shown not to be the determinative factor in the psychologists' opinion. The district court determined that the opinions of the three experts who testified Arculeo would have serious difficulty controlling his dangerous behavior outweighed the opinion of Arculeo. Arculeo testified that he is not a danger and does not have the propensity to commit repeat acts of sexual violence, but he also testified that he was more

10

than willing to fabricate or lie if it benefitted him. This court does not determine the credibility of witnesses. 292 Kan. at 104.

The State argues persuasively that the examples Arculeo provided in his appeal brief of his ability to exercise self-control are actually manifestations of his diagnoses and suggest that the periods of control are actually examples of his ability to be manipulative for his own personal gain. The State also highlighted excerpts from the evaluations and testimony to demonstrate Arculeo's impulsivity, emotional instability, and tendency to act out, whether in a structured setting or not. The State noted that Arculeo had serious difficulty controlling his sexual desires while in prison, as evidenced by the fact that he sought and acquired pornography, including child pornography with "avidity" and without inhibition. Dr. Grimmell noted that this "speaks to a level of sexual preoccupation," which is its own separate risk factor for reoffending and which Dr. DiRubbo testified was a problem in itself. Dr. Grimmell testified that Arculeo has "a lot of trouble controlling himself." Dr. DiRubbo described Arculeo as having an "inability to control his sexual urges" and limited impulse control. Dr. DiRubbo stated that Arculeo could not control his sexual impulses even while incarcerated.

The trial record reflects that Arculeo did not consider his crimes to be of a serious or dangerous nature. For example, Arculeo stated that he did not kill anybody and did not deserve an 18-year sentence. Believing that he is "too open minded," Arculeo also justified his conduct and minimized his crimes, even blaming them on his diabetes and even while participating in his SOTP. Arculeo was noted as making impulsive decisions while seeking emotional comfort from the children. Dr. DiRubbo described Arculeo as being impulsive, having poor judgment, resistant to psychological treatment, and noted that Arculeo may act out without regard to the consequences. Arculeo described himself as taking advantage of opportunities without second thoughts in "'spur of the moment'" situations. Arculeo provided little insight into what might make him reoffend, stating, "There's so many different ways." Poor impulse control combined with one or more

criminal charges or convictions related to inappropriate sexual behavior contributes to a difficulty controlling dangerous behavior. *In re Care & Treatment of Miller*, 39 Kan. App. 2d 905, 911-12, 186 P.3d 201 (2008).

Again, viewing the evidence in the light most favorable to the State, it was reasonable for the district court to determine the State proved beyond a reasonable doubt that Arculeo will experience serious difficulty in controlling his dangerous behavior. See *Ritchie*, 50 Kan. App. 2d at 712. The district court did not err in finding that the State met its burden as to this fourth and final requirement. *Crane*, 534 U.S. at 412-15.

It was reasonable for the district court to find the State met its burden to prove beyond a reasonable doubt that Arculeo meets every requirement under the Act, and the district court's determination that Arculeo is a sexually violent predator is affirmed.

Affirmed.