No. 121,627

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
RANDALL RITCHIE.

SYLLABUS BY THE COURT

The requirement in K.S.A. 2019 Supp. 59-29a08(k), that the court set a hearing within two working days of receipt of notice that a person in the Sexually Violent Predator Treatment Program has been returned from transitional release to the secure commitment facility, is directory, not mandatory.

Appeal from Barton District Court; MIKE KEELEY, judge. Opinion filed May 1, 2020. Affirmed.

*Randall Ritchie*, appellant pro se.

*Brant M. Laue*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

ARNOLD-BURGER, C.J.: The district court civilly committed Randall Ritchie to Larned State Hospital as a sexually violent predator. After working through treatment, Ritchie was placed on transitional release. As part of transitional release, Ritchie had to abide by numerous rules and conditions. After several rule violations, Ritchie was removed from transitional release and returned to Larned State Hospital.

Approximately 23 days later, the district court held a hearing to determine whether the State could establish probable cause that Ritchie violated the rules and conditions of his transitional release. After the hearing, the district court ruled that the State met its

1

burden of proof and that the State had the authority to remove Ritchie from transitional release.

On appeal, Ritchie argues that the district court lacked jurisdiction over the case because the district court did not hold the hearing within two days of receiving notice of his removal from transitional release as required by statute. He also asks this court to reweigh the evidence and find that the district court erred in its ruling. Because we find that the two-day statutory requirement is directory and not mandatory and we cannot reweigh the evidence, we affirm.

FACTUAL AND PROCEDURAL HISTORY

The facts surrounding Ritchie's commitment to the Sexually Violent Predator Treatment Program are set out in *In re Care & Treatment of Ritchie*, 50 Kan. App. 2d 698, 699-701, 334 P.3d 890 (2014). In short, in 1994 Ritchie pled guilty to aggravated kidnapping after grabbing a 13-year-old girl and brutally raping her in a garage. Ritchie was paroled in 2001. In 2006, Ritchie got out of his car to stop an eight-year-old girl riding her bicycle and inserted a finger in her vagina. Four months later, Ritchie approached a young girl in Walmart and "'picked her up, twirled her around, and sat her down and walked off.'" 50 Kan. App. 2d at 700. The next day, Ritchie returned to Walmart and walked up to a young girl and inserted his finger into the girl's vagina. The girl screamed and Ritchie ran away. He was apprehended leaving the store. Ritchie eventually pled guilty to aggravated indecent solicitation of a child and went back to prison.

After serving most of his prison sentence, in 2012 the State sought to commit Ritchie as a sexually violent predator under the Kansas Sexually Violent Predator Act, K.S.A. 59-29a01 *et seq*. The district court found that Ritchie was a sexually violent

2

predator and committed him to the Larned State Security Hospital. This court upheld the district court's determination. 50 Kan. App. 2d at 701, 712.

By July 2016, Ritchie had advanced to Phase 6 of the program. But just four months later he was returned to inpatient treatment due to rule violations. He challenged that decision, and in April 2017 the district court granted Ritchie's petition for transitional release. He remained in transitional release until February 25, 2019, when he was removed from the transitional release program for a second time and returned to Larned State Hospital. His return to Larned State Hospital was based on a report from his Progress Review Panel (Panel).

According to the Panel, Ritchie was "a danger to the general public and past victims, due to therapeutic, safety and security reasons." The Panel's report listed several incidents where Ritchie violated the rules of his transitional release. For example, Ritchie engaged in unapproved online shopping. While he was at work, Ritchie ordered a lamp from Amazon and then tried to get approval for the purchase from his reintegration director. He was not approved to purchase the lamp. When the lamp arrived, the reintegration director reviewed Ritchie's Amazon account and found that he had recently viewed "pictures of scantily women dressed in bikinis and bikini tops with short shorts."

Ritchie also sought, and was denied, permission to speak with his ex-wife, after having already contacted her. Ritchie had listed his ex-wife as one of his victims. One of the conditions of his transitional release plan was to have no contact with his victims.

There was also an issue with Ritchie texting or calling a female coworker. Ritchie had reported having sexual thoughts about the coworker and, according to his logbook, he had called or texted her over 50 times in a one-week period. According to Ritchie, the calls or texts were work related. But the Panel noted that he did not have as many calls or texts with other coworkers or his supervisor.

3

The Panel also detailed an incident at a Starbucks. Ritchie was sitting at a low chair "in direct line of sight of three young females, likely teenagers who were wearing shorts and all sitting on high chairs." There was concern that Ritchie's low seating put him in a position to see under the females' shorts. When the situation was addressed with Ritchie, he reported not seeing this as a high-risk situation and said that he had no choice where to sit.

Throughout the Panel's report there was a general concern that Ritchie was duplicitous, failed to take responsibility for his actions, and often sought forgiveness rather than permission. The Panel recommended that Ritchie be returned to the inpatient portion of the Sexually Violent Predator Treatment Program to "assist him in more intensely addressing multiple issues threatening community safety while also providing the community with enhanced safety while these serious behavioral issues are addressed."

The district court was given notice of Ritchie's return to commitment on February 26, 2019. On February 28, 2019, the State moved to extend the time to set the K.S.A. 2019 Supp. 59-29a08(k) probable cause hearing. According to the State's motion, both parties needed time to accommodate counsels' and witnesses' schedules. On March 5, 2019, Ritchie moved the district court to order him returned to transitional placement arguing that he was prejudiced, and the court lacked jurisdiction over the State's notice of return, because the court did not hold a hearing within two working days of receiving notice that he was returned to Larned State Hospital. The district court held a hearing relating to Ritchie's return to commitment on March 21, 2019.

At the start of the hearing, the district court denied Ritchie's motion and went on to allow the parties to call witnesses. The State called Ritchie, his transitional release house director, and two psychologists who evaluated Ritchie. The State's witnesses largely

4

explained the events that led to the written recommendation that Ritchie be returned to inpatient treatment. Ritchie also testified on his own behalf.

The district court issued its written journal entry on March 25, 2019. The district court found that probable cause existed to show that Ritchie violated the rules of transitional release and should be returned to Larned State Hospital.

"The Court finds the respondent has not been as truthful to his supervisors and treating psychologist as required under the rules. The Court finds his discussion with Dr. Schlosberg in regards to whether he did or did not quit his job was evasive, if not deceitful. The same would apply in regards to the respondent's communications with a landlord where he was attempting to obtain housing. It seems clear he did not explain to the landlord that he was in a sexual predator treatment program. The respondent has used the internet at work and there is some indication there was viewing of inappropriate material. The respondent had contact with his ex-wife, and although they had previous had contact, he failed to report this to his supervisors prior to having the contact. He later told them he was wanting to have contact with her. This is the same situation in regards to the purchase of something that seems to be innocuous and appropriate, that being a lamp for his current wife; however, he was to obtain permission before doing so and the evidence shows he bought the lamp and then asked for permission later. He attempted to influence another resident to purchase a house, which he knew was inappropriate. Even though he said he only talked with the resident and then withdrew his request, it was an attempt to manipulate another resident. There was disagreement as to whether he should have purchased a teddy bear for his wife and whether he had permission. There was a disagreement in regards to cruelty to animals. He indicated he believed he was given permission to kill some turtles, but he misinterpreted the statements made by the staff. There was disagreement and misinterpretation by the respondent in regards to a travel plan and when he was texting a co-worker. He thought he had the opportunity to text a co-worker as this is something he would always do as a supervisor; however, there were approximately 50 texts. There was a disagreement whether this was appropriate or not and whether this was an attempt to manipulate or contact a co-worker.

5

"The Court understands some of the issues and allegations of violations could have been from misinterpretation or misunderstanding. However, the respondent has been involved in the program for several years and knows he must follow each and every rule very specifically. The Court agrees with the respondent that some of the rules seem to be controlling, but there are rules, and over the last few months, the evidence indicates the respondent has not followed the rules and seems to push back against his supervisors."

Ritchie's attorney filed a motion for reconsideration. Shortly after, Ritchie sent the district court a pro se letter contesting the evidence the State offered. He then filed a pro se motion for polygraph examination seeking to show that he was "not likely to commit predatory acts of sexual violence if released and to properly establish evidence to justify a new hearing and to provide evidence which would prove the petitioner's innocence in regards to defendant's allegations." On the same day Ritchie filed his pro se motion, his counsel moved to withdraw as counsel—which the district court later allowed. A short time later, Ritchie moved to proceed pro se.

Ritchie then filed two amended pro se motions requesting that the court grant him a new trial, alter or amend its judgment, or give him relief from its judgment. The district court denied Ritchie's motions in their entirety. But the district court did allow Ritchie to hire a private polygraph examiner who could subject Ritchie to a polygraph examination while he was in Larned State Hospital.

Ritchie timely appeals from the district court's judgement to return him to the secure commitment from transitional release. After Ritchie filed his notice of appeal, he participated in a polygraph examination. As part of his polygraph examination, Ritchie wrote a four-page statement contesting the Panel's findings. Generally, Ritchie either outright denies the Panel's findings or explains that there was a misunderstanding or misinterpretation of events leading to rule violations. Ritchie read his statement to the polygraph examiner and then the examiner asked whether his statement was truthful—

6

two times with different phrasing each time. He answered "'Yes'" each time. The polygraph examiner's opinion was that Ritchie's responses did not suggest deception.

ANALYSIS

*The statutory requirement that the district court schedule a hearing within two working days of Ritchie's return to the secure commitment facility from transitional release is directory not mandatory.*

Ritchie's first issue on appeal is that the district court violated his statutory rights by scheduling a hearing about his removal from transitional placement more than two days after receiving notice that Ritchie was removed from transitional placement. See K.S.A. 2019 Supp. 59-29a08(k) ("The court shall set the matter for a hearing within two working days of receipt of notice of the person's having been returned to the secure commitment facility."). There is no dispute that Ritchie's hearing took place more than two working days after his return to Larned. Ritchie argues this delay deprived the district court of jurisdiction to hear the case.

To decide whether Ritchie is correct, we must interpret the provisions of K.S.A. 2019 Supp. 59-29a08(k) and determine whether the "two working days" requirement is mandatory or directory. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

Upon reviewing the provisions of the Sexually Violent Predator Act (SVPA), we conclude that the provision is directory. As stated in the SVPA "any time requirements set forth in K.S.A. 59-29a01 et seq., and amendments thereto, either as originally enacted or as amended, are intended to be directory and not mandatory and serve as guidelines for conducting proceedings under K.S.A. 59-29a01 et seq." K.S.A. 2019 Supp. 59-29a01(b).

7

So the Legislature has directed that time requirements in the SVPA are not mandatory, instead they serve as guidelines.

This court addressed a similar issue in *In re Care & Treatment of Hunt*, 32 Kan. App. 2d 344, 82 P.3d 861 (2004). We applied the "directory and not mandatory" language to hold the district court did not lose subject matter jurisdiction for failing to hold a trial within 60 days of the initial probable cause determination. 32 Kan. App. 2d at 361, 365.

That said, Kansas courts have not addressed the "directory and not mandatory" language in K.S.A. 2019 Supp. 59-29a01 in relation to the two-day requirement in K.S.A. 2019 Supp. 59-29a08(k). But like this court held in *In re Hunt*, a failure to hold a hearing within a directory time limit does not divest the district court of jurisdiction to hear the case. See K.S.A. 2019 Supp. 59-29a01(b); 32 Kan. App. 2d at 365.

Given the clear statement that any time requirement within the SVPA is directory and not mandatory, the district court did not lose jurisdiction over Ritchie's case even though the district court did not hold a hearing within two days of the court receiving notice of Ritchie's return to Larned State Hospital. See K.S.A. 2019 Supp. 59-29a01(b); K.S.A. 2019 Supp. 59-29a08(k).

*The district court did not violate Ritchie's constitutional rights when it delayed his probable cause hearing.*

Ritchie also argues that the district court violated his constitutional rights because it held the probable cause hearing more than two days after the district court was notified that he was returned to Larned State Hospital. Essentially, he argues that the district court deprived him of a liberty interest without due process and denied him a right to a speedy trial. Ritchie raised his constitutional argument for the first time in his amended motion

8

for new trial. Because he did not raise it during the evidentiary hearing, there was no opportunity for the court to address the factual claims he made in his motion.

In his brief, he states:

"The Court mentioned it needed the delay for scheduling and gathering witnesses. Yet, this delay hampered Mr. Ritchie's defense. The only witnesses who testified were Dr. Quillen, Dr. Schlosberg and Debra Day. Their days are not so busy that they could not have freed up a day to afford Mr. Ritchie his right to a hearing within two working days. Because of electronic filing the subpoenas could have been filed and served in one day. The State had their case together before they returned Mr. Ritchie to Larned State Hospital. The fact the State served the written rule violation report the day of Mr. Ritchie's return is proof of that."

Yet the district court did have a chance to address Ritchie's arguments when he raised them in his amended motion for new trial. The district court did so, without seeking new evidence, when it denied Ritchie's motion. Although the district court's order did not provide any findings of fact for this court to review, Ritchie bears the burden to object to inadequate findings of fact. See *McIntyre v. State*, 305 Kan. 616, 618, 385 P.3d 930 (2016). Because he failed to do so, this court can presume the district court found all facts necessary to support its judgment. See *State v. Jones*, 306 Kan. 948, 959, 398 P.3d 856 (2017).

That said, Ritchie's legal claim—that the district court deprived him of a liberty interest without due process and denied his right to a speedy trial—is not persuasive. Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law." The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "[W]hether due process was provided

9

under specific circumstances raise[s] [an issue] of law, and an appellate court's review is unlimited." *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1272, 136 P.3d 457 (2006).

Ritchie relies solely on *In re Care & Treatment of Ellison*, 305 Kan. 519, 385 P.3d 15 (2016), to support his argument that the district court violated his constitutional rights. His reliance is misplaced. There, the State petitioned to civilly commit Ellison as a sexually violent predator. The district court concluded that there was probable cause that Ellison was a sexually violent predator. The trial to determine whether Ellison should be committed as a sexually violent predator was supposed to occur within 60 days of the probable cause finding. Even so, because of several continuances, there was a delay of over four years between the probable cause determination and the scheduled trial date.

The Kansas Supreme Court held that Ellison's constitutional rights were violated by the long pretrial delay. 305 Kan. at 541-42. Using an analysis drawn from a criminal case, *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), the court found that the length of the delay was the triggering mechanism for a constitutional violation. *Ellison*, 305 Kan. at 534-35. The parties agreed that four years was presumptively prejudicial. The same cannot be said for the delay here. The district court had already found Ritchie to be a sexually violent predator. The district court held the hearing related to his removal from transitional release after only one continuance requested by the State to obtain witnesses. The district court necessarily believed the continuance to be warranted. Moreover, it occurred a mere 23 days after the district court was notified of Ritchie's return to Larned State Hospital. The district court provided Ritchie a full evidentiary hearing. We find that the district court did not violate Ritchie's constitutional rights under these circumstances.

*The district court did not err by denying Ritchie's motion to return to transitional placement.*

Ritchie's last three issues are basically the same. In essence, Ritchie argues that the district court erred by ruling against him because (1) his counsel was ineffective for failing to file certain motions or present certain evidence; (2) the State's evidence was not credible, and (3) he established probable cause that his mental abnormality or personality disorder was changed so that he was safe for conditional release. His arguments largely rely on this court reweighing evidence that the parties presented, or that he wished the parties presented, below.

When the sufficiency of the evidence is challenged, the appellate court does not reweigh the evidence or pass on the credibility of witnesses. We will not disturb a lower court's factual findings when they are supported by substantial competent evidence. See *In re Care & Treatment of Snyder*, 308 Kan. 626, 639, 422 P.3d 85 (2018).

To begin, Ritchie seems to confuse the requirements for a sexually violent predator treatment program patient to be *released* on conditional release with what the State must prove to *revoke that release* and return a patient to Larned State Hospital. For example, Ritchie argues several times that he has "established probable cause his mental abnormality and/or personality disorder has changed so that he is safe for Conditional Release." Whether Ritchie was an appropriate candidate for conditional release is not what the district court was tasked with addressing here. The issue before the district court was whether Ritchie violated the rules while he was on transitional release. See K.S.A. 2019 Supp. 59-29a08(k); see also K.S.A. 2019 Supp. 59-29a08(a)-(d); K.S.A. 2019 Supp. 59-29a10 (addressing procedure leading to transitional and conditional release).

Transitional release staff may remove a person from transitional release if they conclude that the person has broken a single rule, regulation, or directive associated with

11

the transitional release program. K.S.A. 2019 Supp. 59-29a08(j). After the person is removed, the State must prove to the district court that there was "probable cause that the person violated conditions of transitional release." K.S.A. 2019 Supp. 59-29a08(k).

A list of the rules that Ritchie was required to follow was in the exhibits offered to the district court at trial. One of the rules included a prohibition on viewing "any sexually explicit or erotic materials." The State offered evidence that Ritchie viewed an item on Amazon that could be described as erotic—the item included a picture of a woman wearing short shorts and a bra or bikini top.

It was undisputed that Ritchie ordered a lamp from Amazon without asking permission in advance, as required by the program rules.

Another rule stated that Ritchie was not to "have contact with the victim(s) . . . by any means." But Ritchie met with his ex-wife—a person he listed as one of his victims—without asking permission.

As a condition of his release status, Ritchie was not allowed to leave the state of Kansas. According to the rules listed in the Reintegration Facilities Handbook, "A rule violation will be issued if it is determined that a resident has left the state of Kansas or otherwise crossed state lines, even for a short period of time." The State presented evidence that Ritchie traveled to Missouri while looking for another job.

Without going into detail on each violation, the State also presented evidence that Ritchie was dishonest, misleading, or lacked candor when talking to staff or other residents on several occasions. For example, Ritchie attempted to get another resident to get a home mortgage in Ritchie's name and title the home in Ritchie's name and hide it from staff. After it was discovered, Ritchie made a veiled threat to the resident.

12

Ritchie's attitude and actions violated the requirement that

"[r]esidents . . . demonstrate attitudes that facilitate rather than deter the treatment change process. Attitudes facilitating the treatment change process include being open and transparent, asking questions, using active listening, and being open to suggestions for making positive change. Deterring examples include, but are not limited to, omitting information, lying, being deceitful, or using derogatory or demeaning language."

Although Ritchie contends that the State's evidence did not show there was probable cause that he violated the terms of his transitional release, many of his arguments rely on his assertion that the State's witnesses fabricated the evidence against him and lied while testifying. But this is nothing more than a request that this court reweigh the evidence presented to the district court, which this court will not do. See *Snyder*, 308 Kan. at 639.

Ritchie also argues that he refuted each of the State's reported rule violations by writing a statement and then submitting to a polygraph examination on the truthfulness of his written statement. Without addressing the substance of Ritchie's statement, or weighing the statement against the State's evidence, the district court lacked the ability to consider the statement or polygraph examination before reaching a decision here. The polygraph was administered on June 26, 2019, and the letter sent to Ritchie regarding the results was dated June 27, 2019. This was several months after the district court held the initial hearing and issued its written order. It was three weeks after the court entered its order denying his post-hearing motions. And it was approximately two weeks after he filed his notice to appeal. The district court did not have a chance to consider the examination at the hearing, and we are prohibited from doing so now. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011) (issues not raised before the trial court cannot be raised on appeal).

13

Finally, Ritchie argues that his counsel was ineffective. He couches his ineffectiveness arguments on the assertion that his attorney failed to file motions, present evidence, or question witnesses in the manner that Ritchie desired. But Ritchie was present at the hearing and made no assertion that he was displeased with his counsel at the time. Ritchie fails to show how, had his counsel done as Ritchie wished, the outcome of the hearing would have been different. The State presented evidence that Ritchie violated the conditions of his transitional release. A single violation was enough for the State to remove Ritchie from transitional release. See K.S.A. 2019 Supp. 59-29a08(j).

After viewing the evidence in a light most favorable to the State and without reweighing the evidence or the credibility of the witnesses, there was sufficient evidence to support the district court's conclusion that probable cause existed to show that Ritchie violated the conditions of his transitional release. See *Snyder*, 308 Kan. at 639.

Affirmed.