NOT DESIGNATED FOR PUBLICATION

No. 123,072

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment
of ROBERT F. DWERLKOTTE JR.

MEMORANDUM OPINION

Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Opinion filed April 2, 2021.
Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Brant M. Laue*, solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER, J., and WALKER, S.J.

PER CURIAM: On appeal, Robert F. Dwerlkotte Jr. challenges the district court's granting of the State's petition to civilly commit him as a "sexually violent predator" under the Kansas Sexually Violent Prisoner Act (KSVPA), K.S.A. 2020 Supp. 59-29a01 et seq. On appeal, Dwerlkotte raises two issues. First, he contends that the district court violated his rights based on the delay between the filing of the petition and the commencement of trial about a year later. Second, he contends that the evidence presented by the State at trial was insufficient to support the district court's finding that he meets the definition as a "sexually violent predator" set forth in the KSVPA. Because we find that Dwerlkotte's rights were not violated by the district court and that there was sufficient evidence presented by the State to support the district court's findings of fact and conclusions of law, we affirm.

1

We will briefly discuss the facts here and expand on them as necessary in the Analysis section of this opinion as we discuss the specific issues presented on appeal. A review of the record reveals that Dwerlkotte has a history of sexual offenses. These offenses include aggravated indecent solicitation of a child and aggravated sexual battery. See *State v. Dwerlkotte*, No. 118,296, 2018 WL 4167670 (Kan. App. 2018) (unpublished opinion); *State v. Dwerlkotte*, No. 116,231, 2017 WL 1535230 (Kan. App. 2017) (unpublished opinion); and *State v. Dwerlkotte*, No. 109,930, 2014 WL 1707965 (Kan. App. 2014) (unpublished opinion). In addition to his criminal convictions, Dwerlkotte was disciplined in prison for having a sexually explicit conversation with his adult daughter.

On November 15, 2018, the State filed a petition to commit Dwerlkotte as a "sexually violent predator" pursuant to the KSVPA. After the district court continued the hearing to determine probable cause to a date "when both counsel and the witness for the State are available," it was held on February 15, 2019. At the hearing, the State presented the testimony of Dr. Derek Grimmell, a forensic psychologist, who testified regarding his opinions relating to Dwerlkotte being a "sexually violent predator" as that term is defined in the KSVPA. After considering the evidence, the district court found probable cause and ordered that Dwerlkotte be transferred to Larned State Hospital for further evaluation.

Ultimately, the district court convened a one-day bench trial on November 18, 2019. At trial, several witnesses were called. In particular, both parties presented the testimony of expert witnesses—and submitted their written reports into evidence—at trial. Specifically, the State called Dr. Grimmell and Dr. Mitchell Flesher. In response, Dwerlkotte presented the expert testimony of Dr. Robert Barnett, and submitted his written report into evidence. While Dr. Grimmell and Dr. Flesher rendered the opinion

that Dwerlkotte is a "sexually violent predator" who is at high risk to reoffend, Dr. Barnett testified that he could receive the help he needed in the community.

Specifically, both of the State's experts diagnosed Dwerlkotte with "other specified paraphilic disorder," including telephone scatologia—which they defined as sexual gratification from making and receiving obscene phone calls—and incestuous behaviors. In addition, Dr. Grimmell diagnosed "other specified personality disorder with narcissistic and antisocial traits." Moreover, both of the State's experts opined that Dwerlkotte's risk of reoffending is high and that he has serious difficulty controlling his dangerous behaviors. In support of their opinions, the State's experts cited several statistical risk assessment tests that they used in evaluating Dwerlkotte.

For instance, Dr. Flesher expressed the opinion that Dwerlkotte's risk of reoffending is nearly "three times that of the average sex offender" and that he "poses a risk to the health and safety of others." Similarly, Dr. Grinnell opined that Dwerlkotte's "mental abnormality or personality disorder . . . makes him likely to engage in repeat acts of sexual violence" and that he "has difficulty controlling sexualizing everyday interactions and difficulty saying no to his own impulses." Dr. Grinnell explained that Dwerlkotte "has pronounced difficulty in changing his thinking about his sexual behavior. In one of his writings he talked about how verbally he will still say things when he's triggered and he's not sure if he will ever be able to curtail this . . . ." Dr. Grinnell added that he is concerned about Dwerlkotte's future behavior when he takes into consideration "the many times supervision has failed, or he has resisted efforts to change his behavior and that's what leads me to the conclusion he is likely to re-offend."

In contrast, Dwerlkotte's expert, Dr. Barnett, rendered the opinion that Dwerlkotte suffers from "alcohol abuse in remission and adjustment disorder with depressed mood mild." In addition, Dr. Barnett testified that he did not agree with the diagnoses rendered by the State's expert witnesses or that it is likely that Dwerlkotte will reengage in acts of

3

sexual violence. Nevertheless, Dr. Barnett opined that Dwerlkotte "has a pattern of what I consider really ill-considered, foolish behavior, that is impulsive, and what I would just say is simply is stupid. Unless he gets control of this then, no, I think he's going to continue to make these sort of behaviors." Furthermore, Dr. Barnett explained that, in his opinion, Dwerlkotte required "some type of therapy or counseling" in the community. He recognized, however, that "if [Dwerlkotte] he does not maintain sobriety, his chances of acting out again sexually are large."

On February 21, 2020, the district court entered a ten-page decision setting forth its findings of fact and conclusions of law. In its decision, the district concluded that Dwerlkotte met the statutory definition of a "sexually violent predator" and ordered that he be committed to the custody and care of the Kansas Department of Aging and Disability Services for long-term care, control, and treatment. In reaching this conclusion, the district court explained:

> "Sex offenders are at an increased rate of recidivating over the general public. Dwerlkotte has no protective factors, or empirically based attributes, that would tend to reduce his risk of sexual offending. Dr. Grimmell described Dwerlkotte's risk of reoffending as high or an emergency risk for re-offense. Dwerlkotte's degree of risk of committing future acts of sexual violence poses a risk to the health and safety of others such that he would constitute a menace if released.

> "Dr. Grimmell's opinion is that Dwerlkotte's mental abnormality and personality disorder makes him likely to engage in repeat acts of sexual violence. According to the Static 99R, Dwerlkotte's risk of repeating acts of sexual violence is increased by one non-contact sexual offense. Dwerlkotte's municipal conviction of telephone harassment is a non-contact sexual offense. Dwerlkotte's Score on the Static 99R is a 5, placing him in the above average category of risk. Dwerlkotte's risk of engaging in repeat acts of sexual violence is almost three times that of the average sex offender.

"Dwerlkotte's preoccupation with sex surfaced in many settings, and he pursued it in spite of many obstacles. Dwerlkotte knew he was being recorded but did not see his statements to his daughter in the recorded telephone call as problematic.

"The Static 99R tends to underestimate the risk of a particular individual reoffending because it includes only those sexual offenses that are detected. Dwerlkotte's deviant sexual interests in and of themselves elevate his risk of reoffending and none of those deviant sexual interests are scored on the Static tools as risk factors. In addition to his above average score on the Static tools, his likelihood of reoffending is supported by his deviant sexual interests, his resistance to change, and how many times supervision has failed in his life.

"Actuarial instruments underestimate the risk of engaging in repeat acts of sexual violence because they measure only offenses (charges and convictions) and because not all acts of sexual violence are considered by the Static 99-R. In addition, the Static tools measure only five and ten years into the future instead of the likelihood of engaging in an act of sexual violence over the person's lifetime. Dr. Grimmell and Dr. Flesher both agree that Dwerlkotte's personality disorder is of such a degree as to predispose him to commit future acts of sexual violence. They also agree that Dwerlkotte has serious difficulty controlling his dangerous behavior. Dr. Grimmell explained that Dwerlkotte has: 'Difficulty controlling sexualizing everyday interactions and difficulty saying no to his own impulses. He has pronounced difficulty in changing his thinking about his sexual behavior.' Dwerlkotte's narcissistic and antisocial behaviors were not a passing fancy but an enduring trend.

"Dr. Grimmell also opined that when someone attempts to go around supervision in the manner Dwerlkotte has, 'I don't see how we can safely manage them in the community.' Drs. Grimmell's and Flesher's opinions and conclusions are based on facts and data of a type reasonably relied upon by psychologists when evaluating whether a person meets the criteria of a sexually violent predator. Their opinions are based on a reasonable degree of psychological probability."

On March 13, 2020, Dwerlkotte filed a timely notice of appeal.

ANALYSIS

*Alleged Due Process Violation*

Dwerlkotte contends that "[t]he delay between the filing of the petition and trial violated [his] due process rights." In his argument, Dwerlkotte intermingles constitutional due process and statutory rights. In response, the State argues that the scheduling of Dwerlkotte's trial was consistent with his due process rights and that Dwerlkotte has failed to show that he was prejudiced by the "two modest continuances, one as to the probable cause hearing and one as to trial." For the reasons stated below, we agree with the State's argument.

Under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law." "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). "'[W]hether due process was provided under specific circumstances raise[s] [an issue] of law, and an appellate court's review is unlimited.'" *In re Care & Treatment of Ellison*, 305 Kan. 519, 533, 385 P.3d 15 (2016), quoting *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1272, 136 P.3d 457 (2006). Likewise, statutory interpretation presents a question of law over which we have unlimited review. *State v. Williams*, 311 Kan. 88, 92, 465 P.3d 540 (2020).

It is undisputed that the KSVPA contains several time periods that are—to the extent reasonable to do so—to be followed by district courts. K.S.A. 2020 Supp. 59-29a05(b) states that "[w]ithin 72 hours after a person is taken into custody . . . *or as soon as reasonably practicable* . . . such person shall be provided with . . . a hearing to contest probable cause as to whether the detained person is a sexually violent predator." (Emphasis added). Also, K.S.A. 2020 Supp. 59-29a06(a) states that within 60 days after

the probable cause determination, and the district court is to "set the matter for a pretrial conference to establish a mutually agreeable date for trial to determine whether the person is a sexual violent predator." Furthermore, the statute provides that "[t]he trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice and when the respondent will not be substantially prejudiced."

Nevertheless, the Kansas Legislature explicitly stated in the KSVPA that "any time requirements set forth in K.S.A. 59-29a01 et seq. . . . either as originally enacted or as amended, are *intended to be directory and not mandatory and serve as guidelines for conducting proceedings* under K.S.A. 59-29a01 et seq." (Emphasis added.) K.S.A. 2020 Supp. 59-29a01(b). Likewise, our court has consistently found that the time periods set forth in the KSVPA are directory and not mandatory. See *In re Care & Treatment of Ritchie*, 58 Kan. App. 2d 189, 194-95; 465 P.3d 184 (2020); *In re Care & Treatment of Hunt*, 32 Kan. App. 2d 344, 365, 82 P.3d 861 (2004); and *In re Care & Treatment of Kearney*, No. 117,537, 2018 WL 3400707, at *6 (Kan. App. 2018) (unpublished opinion).

Accordingly, we do not find that the district court violated Dwerlkotte's rights in this case. Rather, a review of the record reflects that district court reasonably exercised its authority to control its own docket in the best interests of the administration of justice. Likewise, we do not find that Dwerlkotte was prejudiced—much less substantially—by the court's scheduling of pretrial matters and the trial in this case. In fact, Dwerlkotte arguably benefitted from the district court's scheduling because it would allow his counsel—as well as his expert—more time to review discovery and to prepare for trial.

Finally, we find Dwerlkotte's reliance on the case of *In re Care & Treatment of Ellison*, 305 Kan. 519, 385 P.3d 15 (2016), to be misplaced under the circumstances presented in this case. In *Ellison*, there was a delay of over four years between the filing

of the petition under the KSVPA and the trial date. Understandably, our Supreme Court held that Ellison's constitutional due process rights were violated by such a lengthy delay. 305 Kan. at 541-42. Moreover, in *Ellison*, the parties agreed that the more than four-year delay was presumptively prejudicial. 305 Kan. at 534-35.

In the present case, Dwerlkotte's trial was held approximately one year after the State filed its petition under the KSVPA and less than a year after the probable cause determination. As discussed above, there is no evidence in the record to suggest that Dwerlkotte was prejudiced by the timing of the probable cause determination or the trial. Consequently, we conclude that neither Dwerlkotte's statutory nor due process rights were violated.

*Substantial Competent Evidence*

Dwerlkotte also contends that the State failed to present sufficient evidence to support the district court's conclusion that he is a "sexually violent predator" as that term is defined under the KSVPA and, as a result, should be committed to the custody of the Kansas Secretary for Aging and Disability Services. When presented with the issue of whether the evidence was sufficient to sustain the State's burden of proof in a "sexually violent predator" case, we must review all the evidence in the record in the light most favorable to the State as the prevailing party. In doing so, we are to determine whether a reasonable fact-finder could have found the State met its burden to demonstrate beyond a reasonable doubt that the individual in question is a "sexually violent predator" under the KSVPA. However, we are not to reweigh the evidence, determine the credibility of witnesses, or resolve conflicts in evidence. See *In re Care & Treatment of Williams*, 292 Kan. 96, 104, 253 P.3d 327 (2011).

Under the KSVPA, the term "sexually violent predator" is defined as "any person who has been convicted of or charged with a sexually violent offense and who suffers

from a mental abnormality or personality disorder which makes the person likely to engage in repeat acts of sexual violence." K.S.A. 2020 Supp. 59-29a02(a). As our Supreme Court has explained, the State is required to establish four elements beyond a reasonable doubt:

> "(1) the individual has been convicted of or charged with a sexually violent offense, (2) the individual suffers from a mental abnormality or personality disorder, (3) the individual is likely to commit repeat acts of sexual violence because of a mental abnormality or personality disorder, and (4) the individual has serious difficulty controlling his or her dangerous behavior. See K.S.A. 2010 Supp. 59-29a02(a); [*Kansas v. Crane*, 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002)]; PIK Civ. 4th 130.20." *Williams*, 292 Kan. at 106.

Here, it is undisputed that Dwerlkotte has been convicted of sexually violent offenses—aggravated indecent solicitation of a child [K.S.A. 2020 Supp. 59-29a02(e)(7)] and aggravated sexual battery [K.S.A. 2020 Supp. 59-29a02(e)(9)]. In addition, Dwerlkotte candidly concedes that he suffers from a mental abnormality or personality disorder. However, Dwerlkotte does not agree with the diagnoses rendered by the State's expert witnesses.

Instead, Dwerlkotte focuses his argument on whether he is likely to commit repeat acts of sexual violence and that he has serious difficulty controlling his dangerous behavior. According to K.S.A. 2020 Supp. 59-29a02(c), a person is "likely to engage in repeat acts of sexual violence" if "the person's propensity to commit acts of sexual violence is of such a degree as to pose a menace to the health and safety of others." Based on our review of the record on appeal, we find that the State presented sufficient evidence of each of the four factors identified by our Supreme Court.

Although we will not repeat the evidence cited in the Facts section of this opinion, it is important to reiterate that the State's experts, Dr. Grimmell and Dr. Flesher, both

9

testified that Dwerlkotte is likely to engage in repeat acts of sexual violence because of his mental health diagnoses. In addition, both experts testified that Dwerlkotte has a propensity to commit acts of sexual violence to such a degree as to threaten the health and safety of others. In fact, the State presented testimony that Dwerlkotte is nearly three times more likely than the average sex offender to engage in sexual offenses in the future.

In contrast, Dwerlkotte's expert, Dr. Barnett, opined that Dwerlkotte was not likely to engage in repeat acts of sexual violence in the future and did not pose a menace to the health and safety of others. Nevertheless, even Dr. Barnett recognized that if Dwerlkotte does not get control over his impulsive behaviors and maintain sobriety, "his chances of acting out again sexually are large."

Ultimately, the district court found the opinion testimony of the State's expert witnesses to be credible and persuasive. Moreover, as discussed in the Facts section of this opinion, the district court concluded that "[s]ex offenders are at an increased rate of recidivating over the general public" and that "Dwerlkotte has no protective factors, or empirically based attributes, that would tend to reduce his risk of sexual offending." In particular, the district court found Dr. Grimmell's testimony to be persuasive that "Dwerlkotte's degree of risk of reoffending [is] high" and that he "poses a risk to the health and safety of others such that he would constitute a menace if released."

Rather than faulting any particular factual findings made by the district court, Dwerlkotte broadly argues that "the experts did not sufficiently testify to establish [that] he is likely to reoffend due to a mental abnormality or personality disorder." Based on our review of the record, we disagree. The State's experts provided testimony—based on a reasonable degree of psychological probability—upon which a rational fact-finder could conclude beyond a reasonable doubt that Dwerlkotte has been convicted of sexually violent offenses, that he suffers from a mental abnormality or personality disorder, that he is likely to commit repeat acts of sexual violence because of his mental

10

abnormality or personality disorder, and that he has serious difficulty controlling his dangerous behaviors. Thus, viewing the evidence in the light most favorable to the State, we find that there is sufficient evidence in the record to establish beyond a reasonable doubt that Dwerlkotte is a "sexually violent predator" pursuant to K.S.A. 2020 Supp. 59-29a02(a) and to support his placement in the custody of the Kansas Secretary for Aging and Disability Services pursuant to K.S.A. 2020 Supp. 59-29a07(a).

Affirmed.

11