NOT DESIGNATED FOR PUBLICATION

No. 124,773

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Care and Treatment of
RANDALL JOE RITCHIE.

MEMORANDUM OPINION

Appeal from Barton District Court; STEVEN E. JOHNSON, judge. Opinion filed September 23, 2022. Affirmed.

*Shannon S. Crane*, of Hutchinson, for appellant.

*Dwight R. Carswell*, deputy solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., HURST, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Randall Joe Ritchie was committed to Larned State Hospital (Larned) as a sexually violent predator in 2012. In conjunction with his 2019 annual evaluation, Ritchie sought to be placed outside the confines of Larned on transitional release. To obtain a hearing on his request, Ritchie had to persuade the district court that probable cause existed to believe that his mental abnormality or personality disorder had so changed that he was safe to be placed in the community. After an initial hearing, the district court found Ritchie failed to meet his burden of proof to establish probable cause and denied the request for transitional release. Ritchie appeals that determination. After a thorough review of the record, we affirm the district court's decision.

FACTUAL AND PROCEDURAL BACKGROUND

The facts leading to Ritchie's commitment to the Sexually Violent Predator Treatment Program are set out in his direct appeal of the commitment order. See *In re*

1

*Care & Treatment of Ritchie*, 50 Kan. App. 2d 698, 699-701, 334 P.3d 890 (2014). Ritchie eventually obtained transitional release, but it was later revoked by the district court, and Ritchie unsuccessfully appealed that decision. See *In re Care & Treatment of Ritchie*, 58 Kan. App. 2d 189, 200, 465 P.3d 184 (2020). That opinion contains a more detailed history of Ritchie's proceedings. 58 Kan. App. 2d at 190-93. We will not repeat the extensive factual background contained in the record of the previous appeals. But recognizing the ongoing nature of this case, we consider the entirety of the factual history in analyzing Ritchie's present appeal.

The short summary is that Ritchie has acknowledged a lengthy history of sexually abusing young children, beginning when he was a juvenile, but he was not prosecuted criminally for any of those sexual assaults. Ritchie admits that he has sexually victimized more than 40 females, mostly young children, though he also admits to victimizing some adult women, including a former wife. There is an extensive accounting of Ritchie's historical predatory behavior in the record of his previous appeals.

In 1994, when Ritchie was 32 years old, he pleaded guilty to aggravated kidnapping after forcing a 13-year-old girl into a garage and brutally raping her. Five years after he was released from prison, and while on parole for the aggravated kidnapping, Ritchie pleaded guilty to one count of aggravated indecent solicitation of a child. Although convicted of only a single count, Ritchie admitted to several incidents of sexual abuse involving children over a four-month period in 2006. Ritchie approached young girls, unknown to him, in public places, and sexually assaulted them.

In one of the 2006 incidents, Ritchie got out of his car to approach an eight-year-old girl riding her bicycle and inserted a finger in her vagina. A few months later, Ritchie approached a girl he believed to be around the same age in Walmart and "'picked her up, twirled her around, and sat her down and walked off.'" *Ritchie*, 50 Kan. App. 2d at 700. The next day, Ritchie returned to Walmart and approached a different eight-year-old girl

2

and "'put [his] hand underneath her dress and touched her vagina and inserted [his] pinkie.'" 50 Kan. App. 2d at 700.

In November 2012—before Ritchie had completed his sentence for his 2006 conviction—he was civilly committed as a sexually violent predator under the Kansas Sexually Violent Predator Act (KSVPA), K.S.A. 2021 Supp. 59-29a01 et seq. While noting that Ritchie's expert at the time, Dr. Robert Barnett, disputed the expert diagnoses presented by the State, the district court found that Ritchie suffered from pedophilia, frotteurism, and antisocial personality disorder. Our court affirmed the district court's findings, and Ritchie was committed to Larned as a sexually violent predator. 50 Kan. App. 2d at 701, 712.

As part of his commitment under the SVPA, Ritchie has received the required annual psychological evaluations and reports. See K.S.A. 2021 Supp. 59-29a08(a). Every annual report has concluded that Ritchie remains a sexually violent predator and has recommended that he remain in state custody. But in April 2017, the district court placed Ritchie on transitional release over the objection of the Secretary for the Kansas Department for Aging and Disability Services (KDADS). The district court found that the State's rationale for denying Ritchie's request for transitional release at that time stemmed from evidence that he had been dishonest with treatment staff, not that he had committed behavioral rule violations or otherwise engaged in deviant sexual behavior while in the Sexual Predator Treatment Program (SPTP). Noting the conflicting expert evidence presented at the hearing, the district court found that the State had not sustained its burden of proof, and Ritchie was placed on transitional release.

The SPTP consists of three inpatient tiers followed by two outpatient levels—transitional release followed by conditional release. Following his 2017 annual review and grant of transitional release, Ritchie petitioned for *conditional* release—the last step in the SPTP. In 2019, before the evidentiary hearing on Ritchie's conditional release

petition, KDADS removed him from transitional release for violating the SPTP program rules. After an evidentiary hearing, the district court upheld Ritchie's return to secure commitment. Evidence of violations of program rules included repeatedly being dishonest or misleading with staff, residents, and his treating psychologist; having repeated unauthorized contact with a previous victim, his ex-wife; making unauthorized purchases on the internet; viewing an item on Amazon that could be described as erotic; purchasing a teddy bear, which is a child-centered item that could be used to lure or initiate contact with a child; sending more than 50 text messages in one week to a female co-worker about whom he admitted having sexual thoughts, and who had young children; sitting near and watching a table with teenage girls at a Starbucks; failing to inform a landlord he was in the SPTP; cruelty to animals for slitting the throats of turtles he caught; and leaving the state without permission. Ritchie unsuccessfully appealed his removal from transitional release to this court. See *Ritchie*, 58 Kan. App. 2d at 200 (concluding there was sufficient evidence to support district court's determination). Following his return to Larned, Ritchie was placed back on Tier One of the SPTP and remained at that level throughout 2019 and 2020.

As part of his 2019 annual review, Ritchie petitioned for a return to transitional release over the KDADS's objection and requested appointment of an independent examiner. The district court appointed Dr. Robert Barnett to perform the independent evaluation. But as a result of COVID-19 related issues, the district court did not hold an annual review hearing or address the request for transitional release until a November 2021 hearing, where Ritchie was personally present but did not testify. The only witness called was Dr. Robert Barnett, a self-employed clinical psychologist, who previously evaluated Ritchie and testified on his behalf in the original commitment proceeding in 2012.

As part of the annual review, the district court considered the 2019 and 2020 annual reports. The most recent complete psychological testing by KDADS came from

4

the 2019 annual report because Ritchie declined to participate in an interview for his 2020 annual review. Both annual reports were authored by Scott C. Wilson, a licensed clinical psychologist, and psychologist Dr. Marc Quillen.

Wilson indicated in both reports that he had administered the Static-99R-2003, an actuarial instrument designed to assess the probability of reoffending. Ritchie scored identically on the 2019 and 2020 reports, which placed him in the "Average Risk" category. Another test, the ACUTE-2007, showed in 2019 that Ritchie's "current risk is impacted by hostility, rejection of supervision, and emotional collapse," with scores that suggested a high priority for general recidivism and a moderate priority for sex and violence risk. For 2020, Ritchie's scores on the ACUTE-2007 corresponded to a moderate priority for general recidivism and a high priority for sex and violence risk.

Overall, Ritchie's evaluators noted that Ritchie's combined scores on these tests led to a high risk/need category in 2019, and a moderate risk/need category in 2020. Likewise, based on Ritchie's overall participation in the SPTP and the results of these actuarial tests, the State's experts reached the same conclusion in both reports: that Ritchie remained a sexually violent predator based on his previous convictions and diagnosed mental abnormalities or personality disorders, consisting of "Pedophilic Disorder, Sexually Attracted to Females, Nonexclusive Type"; "Frotteuristic Disorder"; and "Antisocial Personality Disorder."

Dr. Barnett evaluated Ritchie in June 2020, and his report was admitted as evidence at the hearing. His opinion of Ritchie's mental condition has not changed since his 2012 assessment. Based on his evaluation, Dr. Barnett diagnosed Ritchie with "Sexual Abuse of a Child" and "Alcohol Abuse, Severe, In Remission." Although he observes that Ritchie's "history of sexual offending has been unusually problematic and concerning," and he "has a long history of sexually acting out and lack of observation of sexually

5

appropriate boundaries," Dr. Barnett disagrees with the State's diagnosis that Ritchie suffers from pedophilia, frotteurism, or antisocial personality disorder.

Dr. Barnett's report explains that the diagnoses of pedophilia and frotteurism are "difficult to confirm at this time" since Ritchie has lacked the opportunity to reoffend while being held in the SPTP. He also noted Ritchie "does not acknowledge any particular sexual interest in children at this stage in his life," nor was there any evidence he had engaged in frotteurism while being committed to Larned. Dr. Barnett testified that pedophilia and frotteurism were compulsive behaviors, and he found it difficult to believe Ritchie suffered from them given the lack of evidence that Ritchie was unable to control his behavior. Although frotteurism is not considered a compulsive disorder in the DSM-V, Dr. Barnett explained that the DSM-V "states clearly that [it] is not intended to be a substitute for clinical judgment," so he also relied on his clinical judgment and experience in making diagnoses.

As for antisocial personality disorder, Dr. Barnett noted that Ritchie scored "relatively low" on the Hare Psychopathy Checklist-Revised, which suggested a low likelihood of having antisocial personality disorder. Ritchie also showed "a single, mild elevation on . . . Scale 4 [of] Pd" on the Minnesota Multiphasic Personality Inventory, Second Edition (MMPI-2). According to Dr. Barnett, this may suggest "rebelliousness, impulsivity, and immaturity," but that rating also "is a common high-point among a normal male population." Dr. Barnett stated that while Ritchie "has antisocial aspects and features to his personality, I am not convinced that he meets the full criteria for antisocial personality disorder."

Dr. Barnett also discussed Ritchie's risk of recidivism, which he assessed by administering several actuarial instruments. On the Static-99R actuarial instrument, consistent with the State's experts, Dr. Barnett assessed Ritchie as having "moderate-

high" risk of recidivism. But Dr. Barnett also stated that simply because of his age, Ritchie would drop to a "low-moderate" risk in just a couple of years.

Dr. Barnett also administered an Inventory of Offender Risk, Needs, and Strengths (IORNS) as part of Ritchie's evaluation. The IORNS instrument contains three components: sections to assess both static and dynamic risk factors, and a section that "evaluates protective factors statistically shown to reduce an offender's likelihood to reoffend." For the static section, which is like a Static-99R, Dr. Barnett assessed Ritchie at the 79th percentile compared to "a normative sample of sex offenders in his age range." For the dynamic section, Dr. Barnett assessed Ritchie at the 30th percentile, which he opined was "much lower." As for the final measure, Dr. Barnett assessed Ritchie at the 99th percentile, which suggested Ritchie "has very good protective resources" such as "having a protective family, supportive family, things in the community that would assist him in avoiding future problems." Dr. Barnett testified that combining these scores showed "an average reoffense potential." On the report, Dr. Barnett calculated an overall IORNS risk index score of the 43rd percentile, which suggested a "low moderate risk of recidivism [that] translates to Mr. Ritchie being less likely than 57% of other offenders to reoffend."

Dr. Barnett's report provides:

"Because Mr. Ritchie has such a dire history of sexual misbehavior, it is difficult to consider the possibility that he could behave appropriately in the future. The discussion in both reports of his past illegal behavior is complete and fully detailed. The question remains whether he is safe to be in the community in the future, and of course whether he meets the legal criteria to be committed as a sexually violent predator under the Laws of the State of Kansas. Because this law requires a mental disorder that would pre-suppose him for future inappropriate behavior, this element is crucial. I am not convinced at this point that Mr. Ritchie meets the diagnostic criteria for pedophilia, frotteurism, or anti-social personality disorder, despite his history. I reiterate that he successfully completed

7

his two terms of incarceration with a relatively benign behavioral record and completed the treatment that was required of him."

Dr. Barnett's report concluded by discussing the rule violations that led to Ritchie's removal from transitional release in 2019. According to Dr. Barnett,

"Perhaps the most salient issues here are Mr. Ritchie's difficulty following the structure imposed on him in transitional release, as well as noting that his violations were not sexual, if you disregard the subjective accusations that he was 'looking' at girls in Starbucks. In my clinical opinion, his violation of the rules is troublesome, but should not be seen as ruling out the possibility of moving back, stepwise, to transitional release."

In his testimony, when directly asked whether he believed Ritchie's condition had changed to the point where he would be safe to be released into the public, Dr. Barnett responded:

"Well, you're asking me to predict the future. I would say he's done everything that's been asked of him. I think the sort of things that he did in prison, and he's done in this particular program, makes me think that *he's not particularly dangerous anymore*. I mean, nobody can predict this with 100 percent certainty. I think we can all agree to that." (Emphasis added.)

And when he was asked whether there was probable cause to believe that Ritchie's mental abnormality has significantly changed so that he is safe to be placed in transitional release, Dr. Barnett stated:

"I have a problem with the question, because it presupposes that I agree with the diagnoses that were given by people at Larned. And I don't. The two diagnoses that I did are the only diagnoses I have—I've had. And I—*it's not a matter of him changing or improving*. He's been through treatment. He's—I don't think he has a diagnosis of pedophilia or the antisocial personality disorder.

"I can't predict the future with 100 percent certainty. But certainly his problems that he's had that led him here were not because he was sexually acting out. It was

8

because he was, oh, just not using very good judgment in other areas of his life. I don't know [if] that answers your question." (Emphasis added.)

Following the hearing, the district court issued an order finding Ritchie had failed to sustain his burden of establishing probable cause to believe his condition had changed to warrant returning to transitional release. The court noted in particular that Dr. Barnett had used similar methods as the State's experts, but reached a different conclusion based on his own interpretations of the testing methods used. The court explained that its "primary concern" was the fact that both reports reflected Ritchie "had difficulty and needed to work on his rejection of supervision [which] was primarily the issue when he was granted transitional release and was the cause of the State's revocation thereof." The court determined that "there will be a time [Ritchie] will have reached the point to try transitional release again, but he simply has not provided probable cause for the court to believe that that time has arrived on this annual review." The court later memorialized this ruling with a written journal entry denying Ritchie's request for transitional release.

Ritchie timely appealed.

ANALYSIS

Ritchie's sole claim on appeal is that the district court erred in finding Ritchie failed to establish probable cause that his mental abnormality or personality disorder had significantly changed so that it would be safe to place him in transitional release.

Appellate courts apply a de novo standard of review when a person committed under the SVPA appeals a district court's probable cause determination after an annual review hearing. *In re Care & Treatment of Burch*, 296 Kan. 215, 222-23, 291 P.3d 78 (2012). When making this determination, we consider the evidence in the light most favorable to the committed person and resolve all conflicting evidence in that person's favor. 296 Kan. at 225.

9

Ritchie argues he presented sufficient evidence to establish probable cause based on Dr. Barnett's report and testimony, which contradicted the opinions of the State's experts as seen in his 2019 and 2020 annual reports. Dr. Barnett disagreed with the diagnoses reached by the State's experts and explicitly testified that he did not believe Ritchie suffered from antisocial personality disorder, pedophilia, or frotteuristic disorder. The State asserts that Dr. Barnett's testimony was not sufficient to establish that Ritchie's mental condition "has significantly changed" because Dr. Barnett does not believe his condition has, in fact, changed. Dr. Barnett has the same diagnosis for Ritchie that he had in 2012. The State also points out that Dr. Barnett did not offer any opinion that Ritchie was "safe" for transitional release.

Under the SVPA, a committed person has the right to an examination of their mental condition once every year. K.S.A. 2021 Supp. 59-29a08(a). After receiving an annual report from KDADS, as Ritchie has done here, the person may request an annual review hearing and petition for transitional release. K.S.A. 2021 Supp. 59-29a08(b). At the hearing, the committed person must show probable cause to believe their mental abnormality or personality disorder has significantly changed so that they are safe to be placed in transitional release. K.S.A. 2021 Supp. 59-29a08(d). Probable cause exists when there is sufficient evidence to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that the committed person's mental abnormality or personality disorder has so changed that the person is safe to be placed in transitional release. *Burch*, 296 Kan. at 226 (citing *In re Care & Treatment of Sipe*, 44 Kan. App. 2d 584, 592-93, 239 P.3d 871 [2010]). Ritchie must show probable cause for two statutory requirements contained in K.S.A. 2021 Supp. 59-29a08(d): (1) Ritchie's mental abnormality or personality disorder has changed; and (2) it has changed to such a degree that he is safe to be placed in transitional release. *Burch*, 296 Kan. at 226-27.

*Has Ritchie's mental abnormality or personality disorder changed?*

Dr. Barnett's testimony is the sole evidence offered in support of Ritchie's request for transitional release. Dr. Barnett testified that he does not believe Ritchie meets the diagnostic criteria of pedophilia, frotteurism, or antisocial personality disorder, which comprise the mental abnormalities and behavior disorders which formed the basis for Ritchie's SVP commitment.

But when asked if he believed Ritchie's mental abnormalities had changed so that he would be safe to be placed in transitional release, Dr. Barnett responded:

> "I have a problem with the question, because it presupposes that I agree with the diagnoses that were given by people at Larned. And I don't. The two diagnoses that I did are the only diagnoses I have—I've had. And I—*it's not a matter of him changing or improving*. He's been through treatment. He's—I don't think he has a diagnosis of pedophilia or the antisocial personality disorder." (Emphasis added.)

Dr. Barnett's answer to this question is clear—he does not believe Ritchie has changed—he believes the State got the diagnoses wrong from the beginning. This is problematic because the probable cause standard in the SVPA *requires* a change in the committed person's mental abnormality or personality disorder. Self-evidently, the point of the SPTP is to bring about a change in the committed person's underlying mental condition so that the person may be safely reintegrated in the community. Barnett's testimony forecloses change in Ritchie's condition as the reason for a different diagnosis. Barnett is in the unique position of having evaluated Ritchie in 2012 for the original trial and again in 2020. Notably, he does not identify any differences, if there are any, between the results of the psychological testing he administered in 2012 and 2020. And he expressly does not believe change or improvement in Ritchie's condition has occurred. The State's expert witnesses likewise see no change. The statutory standard here is

11

plain—the committed person's condition must *significantly* change from what it was at the time of the person's commitment. K.S.A. 2021 Supp. 59-29a08(d).

The focus in Barnett's report, and in his testimony, is that Ritchie has been regularly participating in the SPTP and doing what has been asked of him. He also emphasizes Ritchie's completion of his incarceration with a relatively benign behavioral record as well as completion of required prison treatment. Barnett notes concern for the victims of the crimes for which Ritchie was incarcerated and he observes, "[f]actors that would *potentially* change the view of Ritchie are that he is now considerably older and has had numerous years of incarceration to consider and evaluate his behavior." (Emphasis added.) He believes Ritchie could benefit from "on going intermittent psychotherapy, group after-care for his sexual offending, and perhaps electronic monitoring in the community." These are the very same factors and recommendations made by Dr. Barnett in his 2012 report and testimony.

In 2020, he still describes the same factors as "potentially" changing Ritchie, but there is no discussion of factors which in fact precipitated change in Ritchie's underlying mental condition. The test for transitional release is not "potential" change, and it is not enough to show the committed person has participated in the treatment program. Dr. Barnett admits his disagreement with the State's continuing diagnosis is not based on any change in Ritchie's condition. Rather, it appears to reflect a continuing disagreement about the original diagnosis presented by the State in 2012. But regardless of the reason, by Dr. Barnett's express denial there has been a change in Ritchie's condition, we see no evidentiary basis for a person of ordinary prudence and caution to conscientiously entertain a reasonable belief there has been any significant change.

12

*Is Ritchie safe to be placed in transitional release?*

Dr. Barnett's report raises the issue of safety, "[t]he question remains whether [Ritchie] is safe to be in the community in the future," but it provides no direct answer. Rather, the report simply reflects that Barnett is "not convinced . . . that Mr. Ritchie meets the diagnostic criteria for pedophilia, frotteurism, or antisocial personality disorder, despite his history." In his testimony, Dr. Barnett did address the question of whether Ritchie was safe to be released in the community. But his response was characterized not in terms of safety, but in terms of the level of dangerousness Ritchie presented. Thus, when asked if Ritchie was safe for transitional release, Dr. Barnett responded by saying he did not think Ritchie was "particularly dangerous anymore." We recognize that "a finding of probable cause does not necessarily require that the petitioner proffer a recommendation containing the exact words used by the statute." *Burch*, 296 Kan. at 226. But here it is not simply a question of using different words to convey the evidence required by the statute. "Safe" and "dangerous" are antonyms, and referring to his level of dangerousness—not particularly dangerous—is simply not the same thing as declaring Ritchie safe to be placed in transitional release. Dr. Barnett's answer to the "is he safe" question effectively is, "no, he is dangerous, but not particularly so."

*Burch* also involved a committed SVP who was seeking transitional release after an annual review hearing. At that hearing, Burch presented testimony from an independent expert who concluded that he still suffered from a psychological disorder, but a "'new understanding'" of his own previous childhood sexual abuse "'means *he has become so changed that he is unlikely to engage in acts of sexual violence*.'" 296 Kan. at 227. The Kansas Supreme Court found the language inadequate because the expert "fail[ed] to mention any change in Burch's primary diagnosis," and his report failed to specify if Burch's mental abnormality or personality disorder "has changed such that Burch is safe to be placed in transitional release." 296 Kan. at 227. "Moreover, [the expert's] report not only fails to indicate Burch is 'safe' to be placed in transitional release,

13

the remainder of the report seems to steer away from such a conclusion." 296 Kan. at 228. Similarly, in Dr. Barnett's report, he fails to indicate Ritchie is safe to be placed in transitional release, and comments in Barnett's report, as in *Burch*, tend to steer away from that conclusion. For example, Barnett notes, "Because Mr. Ritchie has such a dire history of sexual misbehavior, it is difficult to consider the possibility he could behave appropriately in the future." Given the seriousness of Dr. Barnett's concern, we believe an express recommendation of transitional release, or some other affirmative indication Ritchie is safe for release, is required to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that Ritchie's condition has so changed that he is safe for transitional release.

In reaching its conclusion in *Burch*, the Supreme Court contrasted the facts to similar cases from this court: *In re Care & Treatment of Miles*, 47 Kan. App. 2d 429, 276 P.3d 232 (2012), and *Sipe*, 44 Kan. App. 2d at 594.

In *Miles*, the SVP petitioner presented reports from two separate psychologists in support of his request for transitional release. Both reports concluded that Miles *no longer* met the diagnostic criteria for pedophilia, which the panel noted was an essential element of his original commitment. The annual reports did not discuss whether Miles' original diagnosis remained accurate. The panel therefore concluded that the favorable reports from two independent experts were enough to create probable cause given the lack of contradictory evidence about Miles' mental abnormality or personality disorder. 47 Kan. App. 2d at 440-41. Here, not only do we have contradictory evidence from the State about Ritchie's condition, unlike the experts in *Miles*, Dr. Barnett does not report or testify that Ritchie *no longer* meets the diagnostic criteria for warranting his commitment as a SVP because he does not acknowledge that Ritchie ever met the diagnostic criteria for pedophilia, frotteurism, or antisocial personality disorder. Thus, although he offers a different diagnosis than the State, Dr. Barnett does not acknowledge any significant change in Ritchie's condition, and the statutory standard requires it.

14

In *Sipe*, the SVP petitioner likewise presented a favorable psychological report from an independent evaluator appointed by the district court. The independent evaluator concluded that Sipe no longer had a significant psychological disorder, was a medium risk of reoffending, and therefore explicitly recommended transferring him to transitional release. The panel concluded that these facts supported a probable cause finding. *Sipe*, 44 Kan. App. 2d at 587, 594. Here, Dr. Barnett identifies Ritchie as having a diagnosis of "Sexual Abuse of a Child" and "Alcohol Abuse, Severe, In Remission," the same diagnosis that the trial court rejected at the time of the original SVP trial. Again, Dr. Barnett's testimony is that Ritchie's 2020 diagnosis is the same as his diagnosis in 2012, and he does not believe it is the result of a change in Ritchie. Additionally, unlike the expert testimony in *Sipe*, Dr. Barnett has not explicitly recommended, in either his report or in his testimony, transferring Ritchie to transitional release at the present time. Rather, he merely opines that Ritchie's earlier failure on transitional release "*should not be seen as ruling out the possibility of moving back, step-wise, to transitional release.*" (Emphasis added.) We note that Ritchie was on Tier One of three inpatient levels of treatment at the time of his review, and Dr. Barnett offered no criticism of that placement.

The only evidence presented in support of probable cause was Dr. Barnett's report and testimony. Given his view that Ritchie's condition has not changed or improved over the course of his treatment at Larned, and the lack of opinion or other evidence that he is safe for transitional release, we agree with the district court's conclusion that Ritchie has failed to meet his burden to establish probable cause. Dr. Barnett's testimony and report are not sufficient to cause a person of ordinary prudence and action to conscientiously entertain a reasonable belief that Ritchie's mental abnormality or personality disorder has so changed that he is safe to be placed in transitional release.

Affirmed.